CASE 71.—PROSECUTION AGAINST T. E. KINNAIRD ON CHARGE OF VIOLATING KENTUCKY STATUTES, SECTION 1552, PROHIBITING THE SELLING OR GIVING AWAY OBSCENE LITERATURE.—Sept. 29, 1909.

## Kinnaird v. Commonwealth

Appeal from Barren Circuit Court.

G. M. BOHANNON, Special Judge.

Defendant convicted and appeals.—Reversed.

1. Indictment and Information—Setting Out Writing Forming Basis of Charge—Necessity.—The writing on which an indictment is founded must be set out therein, unless it has been lost or destroyed, or is in the possession of accused, in which case it is sufficient so to state, and set out the substance thereof as near as may be, or unless the writing contains matter too obscene to be perpetuated as a part of the records of the court, in which case the indictment must so allege, and the accused and his counsel must be given an opportunity before the trial to inspect the writing, and on the trial the same must be introduced.

2. Obscenity—Indictment—Requisites.—Under Cr. Code Prac., Sec. 122, providing that an indictment must contain a statement of the acts constituting the offense in ordinary language, so that a person of common understanding may know what was intended, an indictment for exhibiting an obscene writing, which alleged that accused unlawfully showed and gave to prosecutrix an indecent, obscene, immoral, and disgusting written article written by him; that accused at the time was an elderly married man living with his wife; that the written article purported to be a love letter to prosecutrix, describing alleged diseases of his wife, predicting her demise, and making love to prosecutrix, and that the grand jury was not in possession of the writing, did not charge a violation of Ky. St. Sec. 1352, prohibiting the selling or giving away of obscene literature.

Kinnaird v. Commonwealth.

3. Indictment and Information—Demurrer—Question for Court.
   —Whether or·not a writing is obscene in the sense that a
   prosecution will lie for the publication thereof is a question
   for the court to dispose of in the first instance where a de-
   murrer to the indictment is filed; and where, in the opinion
   of the court, the writing is not obscene, the demurrer
   should   be sustained, though the indictment should charge
   that the writing was obscene, which is merely a conclusion
   of the pleader.

4. Statutes—Construction—Title of Act.—The court in construing
   a statute may look to its title, not for the purpose of enlarg-
   ing, limiting, or modifying the language of the act, but as
   an aid in ascertaining its intention, and this is especially
   true where the act and the title are in harmony; the title
   expressing the purpose of the act and the act carrying out
   the object as declared in the title.

5. Obscenity—Statutes—Construction.—Ky. St., Sec. 1352, pro-
   hibiting the selling, lending, giving away, or showing any
   obscene literature, when construed in the light of its title
   "An act to prevent the printing and distribution of obscene
   literature," etc., does not apply to a letter sent by one to
   another, and intended to be private and personal, but pro-
   hibits the printing and distribution of obscene literature in-
   tended for general or public use and reading.

6. Obscenity—Statutes—Violations.—A letter, written by an el-
   derly married man to a young unmarried woman, wherein
   he expressed his love for her, and stated that his wife was
   suffering from a disease which would shortly cause her death,
   etc., is not within Ky. Statutes, Sec. 1352, prohibiting the
   selling or giving away of obscene literature.

7. Obscenity—Evidence—Admissibility.—Where, on a trial for
   giving away obscene literature, in violation of Ky. St. Sec.
   1352, by writing and sending an obscene letter, accused ad-
   mitted that he wrote and sent the letter, letters written by
   him after the indictment had been returned were incompe-
   tent.   ·

.GEORGE T. DUFF, DUFF & HUTCHERSON and A. E. SUM-
MERS for appellant.

JAS. BREATHITT, Attorney General; THOS. B. McGREGOR,
Assistant Attorney General, and BAIRD & RICHARDSON for
Commonwealth.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

Under an indictment charging him with: "The offense of unlawfully showing and giving away to another person a certain indecent, indiscreet, disgusting, and obscene writing, which was committed as follows, to wit: Heretofore, to wit, on the ——— day of November, 1908, and in the county and commonwealth aforesaid, the said T. E. Kinnaird did then and there unlawfully show, utter, and give to Miss Edith Watson, an unmarried lady, a certain indiscreet, indecent, obscene, offensive, immoral, and disgusting written article, all of which was written by him.

At said time said Kinnaird was an elderly married man, living with his wife, and the said written article aforesaid purported to be a love letter to the aforesaid young lady from ———, describing the alleged diseases of his said wife, predicting her demise, and making love to said young lady, all of which was in purport and language immoral, offensive, indecent and disgusting. The grand jury is not now in possession of said instrument, and for that reason it can not be filed herewith"—the appellant was convicted, and his punishment fixed at a fine of $260 and 120 days' confinement in the county jail. The statute under which the indictment was found reads as follows:

"Section 1352. Any person or corporation who sells, lends, gives away or shows or offers to sell, lend, give away or show, or has in his possession with intent to sell, lend or give away, or to show, or advertises in any manner, or who otherwise offers for loan, gift, sale or distribution, any obscene, lewd, lascivious, filthy, indecent or disgusting book, magazine, pamphlet, newspaper, story-paper, writing, paper, picture, drawing, photograph, figure or image, or any

written or printed matter of an indecent character; or any article or instrument of indecent or immoral use, or purporting to be for indecent or immoral use or purpose, or who designs, copies, draws, photographs, prints, utters, publishes or in any manner manufactures or prepares any such book, picture, drawing, magazine, pamphlet, newspaper, story-paper, writing, paper, figure, image, matter, article or thing, or who writes, prints, publishes or utters, or causes to be written, printed, published or uttered, any advertisement or notice of any kind, giving information, directly or indirectly, stating, or purporting so to do, where, how, of whom, or by what means any or what purports to be any, obscene, lewd, lascivious, filthy, disgusting or indecent book, picture, writing, paper, figure, image, matter, article or thing named in this section, can be purchased, obtained or had." Ky. St., Sec. 1352.

The letter mentioned in the indictment contains many expressions like these:

My. dearley beloved sweet little friend I. avail. my. self of this optunity of writing to you To let you no that you hav. a friend that Loves you most Dearley. Sence the day i first Met you at the corner of The School house in which you teach. yess. I believe I can say, and tell the Truth from the hart That you have not been often my mind one hour at a time except when I was buisy engaged are a sleep.

"as you Steped from Behind some other girl To extend to me the hand of acquents you seamed Like a engel Let down From heaven. O, those Sweet eyes Like bright Morning stars seamed To speak in thunder tones I am to bee your next Loving Deare. * * * "For true Love is stronger Then Death and sharper Then a. two edge. Soard and Covers a Multotude of

faults i honstly believe unless thare is a great change i will bee left a lone in less Then 2 years

"For Trudy is in failing health She is bording on the Bright Deseas The Landrum wiming are verry short lived People and are verry Much subjeck to Prorales.

During the trial, and over the objection of counsel for the appellant, the court permitted to be read to the jury letters written by appellant to Miss Watson after the indictment had been returned against him, in which we find, among others of like character, the following sentiments:

"My. most hiley esteamed friend. It behoes me to wright to you this Letter as i understand you wer some what affended at a former letter Edy i do not Remember all that i wrote in that Letter it seames like a dream it was written on Lection. day and if there was a sober man in the county that day it was a man that Does not drink are one that has no friends are staid at home.

"Edy i do not blame you I Blame your Counsalmen In the first place it aught Never hav been let git out That i Even wrote you a letter then in the Next place your father aught to have come To See me and Kniped it in The bud in Stid of going and pooring oil on you For the publick to set fire To * * *"

"Most hiley Esteamed
    Edy Watson

"Miss Edy in all off my Farmer Communication to you I hav all wais address you as a friend this clause I will hav to omit at this writing. * * *

"Edy what hav you heard That i coud hav said that has. Set you so against Me Edy is you hav Ever heard a word that i hav said Detremental to your

good Name and your standing It is a Lye maid out off whole cloth.

"Edy. I. did tell Tid pace That you had all wais treated Me with So much respeck Love & Kindness that i cood Not help loving you But Edy this is nothing To become affended at why the Blesed word comands us to love Each as we do our selves off corse this dos not mean Lusty love and no such a thought has Ever Entered my hart for we are warned that to Look a Pona woman with Lust is a sin all Ready in the hart. and again we are warned by the word off our Blesed lord & master that he that puttith his wife a way which meanes To cast hur a side and marry a nother commits a dultry and that no a dultries can Enter the Kingdom off god

"So Deare Edy if you hav Ever Conceived of such a thought for my sake and your sake and gods sake Brush it a side for i am as Cleare off harbern such thoughs in my hart as the watter that Drips from the ice that hangs To the hiest clifts off The aerat mountains So Deare Edy what is it I hav said are dun That you will pass me by and never Rais your Eyes Edy i am sorry to have to Make this comparison But you Remind me of a Deare Brother i hav living in Western organ he is a Big doctor now he came To See us a bout 5 years a go he staid six weeks at My house he and his wife and two children. We just worsheped them we all dun all in our power to make Them feel happy and welcom Then i loand him my Seary and team To go a visaten and he keep them 2 weeks let The Team Run a way and Seard up my seary and i made no charge for nuthing i dun for him and when he left For home i loaned him $50 hav his note with 5 years accumilated intrus and he wont as

much as answer my letters when i wright him about the matter. * * *

"Edy trudy has given me hailcolumbay sense she found out a bout That letter and Thretten to write to your mother but I perswaded her not to wright so i don't gess she has Ever wrote yet If she has i never hav heard of it i hope she wont for i think she is a little wrong i no she Is in some things. * * *

"My. Deare much Esteamed
     Edithe Watson

"I wrote you a long letter a bout one month a go I look for some kind of answer But never hav Reseived a word yet so i Now withdraw My proppersition and say That if Nuthing Els will Do you wee will let the court settle it. * * *

"Deare Edy i want to ask you a question and i want you to answer it as a honest Lady for my own satesfaction In short Edy is not old Jim Pace the verry old Rotten Egg Incubater that hatch all this trubble

"I believe he was and will all wais believe it untill you tell me he was not * * *

"in that long letter I wrote you i made a misstake ine one of the Scripture Reffernce i ask you to Read i told you to turn to mathew 23 and Read from the 36 to the 40 verse i shood have said the 22 chapter It teaches us how we aught to live and Esteam Each other Edy the boys got a lot off New Reckords Chrisman a mong them was one the title was when the sun shies Nelly and the clouds go Drifting by Dont you. Sicy For we. will. bee happy By. &. By * * *

The appellant was an elderly married man. Miss Watson a young lady 21 years of age, who taught school in the neighborhood in which appellant resided.

The judgment of conviction must be reversed for four reasons: First, because the court erred in overruling a demurrer to the indictment; second, because the statute supra does not apply to or embrace communications like the one for which the indictment was found; third, the letter mentioned in the indictment is not in the meaning of the statute "obscene, lewd, lascivious, filthy, indecent or disgusting;" and, fourth, for error in admitting the letters written after the indictment was found.

First. The demurrer to the indictment should have been sustained because it failed to set out the writing, or give any sufficient reason why it was not exhibited with the indictment. The statement that "the grand jury is not now in possession of said instrument, and for that reason it can not be filed herewith," is not sufficient to excuse the failure to set it out in the indictment. The general rule in reference to incorporating in the indictment a writing upon which the indictment is founded is that the writing must be set out in the indictment in words and figures unless it has been lost or destroyed, or is in the possession of the accused, or contains matter too obscene or filthy to be perpetuated as a part of the records of a court. Wharton's Criminal Pleadings & Practice, Secs. 166, 202; Bishop's Criminal Procedure, Sec. 509; Commonwealth v. McCance, 164 Mass. 162, 41 N. E. 133, 29 L. R. A. 61; State v. Smith, 17 R. I. 371, 22 Atl. 282; State v. Hayward, 83 Mo., 299; State v. Brown, 27 Vt. 619; McNair v. People, 89 Ill. 441; State v. Zurhost, 75 Ohio St. 232, 79 N. E. 238, 116 Am. St. Rep. 724, 9 Am. & Eng. Ann. Cas. p. 45.

A person who is charged with the commission of a penal or criminal offense that grows out of a writing, or alteration in a writing, made by him is entitled,

under all the rules of criminal procedure, to be in-
formed by an inspection of the indictment of the na-
ture of the charge, so that he may be prepared to
meet it; and he can not have this information unless
the writing alleged to have been executed or altered
is incorporated in the indictment.  If, however, the
writing is lost, and for this reason it can not be set
out in the indictment, it will be sufficient to state
the fact, and set out the substance of the writing in
words and figures as near as may be done, and so, if
the writing is in the possession of the accused, and
for this reason can not be obtained by the grand jury.
In either of these events the administration of justice
would be defeated, and guilty persons permitted to
escape punishment, if the production of the writing
was indispensable. And so, if in prosecutions for the
publication of obscene matter the averment is made
that the matter complained of is so filthy that it would
be offensive to public decency to have it made a part
of the permanent records of a court, it need not be
set out in the indictment, although it must be intro-
duced on the trial of the case, and the accused and his
counsel given opportunity before the trial to inspect
it.

The averments in the indictment in the case before
us do not bring it within any of the exceptions stated
that will excuse the production of the writing as a
part of the indictment.  The charge that the writing
was ''indecent, obscene, offensive, immoral and dis-
gusting'' is merely a conclusion of the pleader.
Whether or not a writing is indecent, obscene, offen-
sive, immoral, or disgusting in the sense that a pros-
ecution will lie for the publication of it is a question
for the court to dispose of in the first instance, if a
demurrer to the indictment is filed.  If, in the opinion

of the court the writing is not indecent, obscene, immoral, offensive, or disgusting, although the indictment should so charge, a demurrer should be sustained. The Criminal Code of Practice (section 122) declares that an indictment must contain "a statement of the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what was intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the rights of the case."

This indictment does not contain any statement whatever of the acts constituting the offense. A person of common understanding can not read it and know whether or not an offense was committed. In the opinion of the pleader an offense was committed; but it is a statement in ordinary and concise language of the acts done that constitute the offense, and not the opinion of the pleader. Stowers v. Commonwealth, 12 Bush, 342; Commonwealth v. Williams, 13 Bush, 267; Commonwealth v. Bowman, 96 Ky. 40, 27 S. W. 816, 16 Ky. Law Rep. 222.

Second. Does the statute supra, under which the indictment was found, apply to or embrace a writing in the form of a letter sent or delivered by one person to another, and intended to be a private communication? In considering this feature of the case we may with much propriety inquire into the purpose of the Legislature in the enactment of the law under which the indictment was found, and the reasons that induced its passage. The title to the act reads, "an act to prevent the printing and distribution of obscene literature and the sale or exhibition of obscene pictures, and the manufacture or distribution or sale of articles or instruments for immoral use." And

it may be looked to, not for the purpose of enlarging, limiting, or modifying the language of the act, but as an aid in ascertaining its intention—especially in view of the fact that the act and the title are in harmony, the title expressing the purpose of the act, and the act carrying out the object as declared in the title.    Endlich on Interpretation of Statutes, Sec. 58; 26 Am. & Eng. Ency. of Law, p. 627.    Unless the language of the act enlarges the scope of it, as expressed in the title, it is plain that it does not apply to a letter sent by one person to another, and intended to be private and personal, but was enacted for the purpose of preventing the printing or writing and distribution and circulation of obscene literature; in other words, the printing and distribution of such literature intended for general or public use or reading, such as a newspaper, magazine, pamphlet, book, or other printed or written matter.    That it was the intention to confine offenses denounced by the act to articles or literature intended for general or public use is we think manifest from the language of the act, which prohibits the selling, lending, giving away, or showing, or having in possession with the intent to sell, lend, give away, or show, any obscene, lewd, lascivious, filthy, indecent  or disgusting book, magazine pamphlet, newspaper, story-paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter of an indecent character. The number of copies of the objectionable paper containing the offensive written or printed matter sold or offered for sale given away, or shown, or in possession with the intent to sell, offer for sale, give away, or show, is not the test to be applied in determining whether or not the statute has been violated—it is the public quality of the act that constitutes the offense,

or the fact that the writing or paper is intended for public or general use, however limited the number of the public for which it was intended. A person who has in his possession an obscene book, writing, or picture, and lends or shows it to the public generally, or even to a limited number of persons, commits an offense against the statute, and so if a person sells, gives away, or offers to sell or give away, any of the writings, pictures, or papers described in the statute, he is guilty. In short, the statute was not designed to prevent the lending, giving away, or showing of an obscene writing, picture or paper to one person, but to prohibit the public or general circulation or distribution of such matter. The letter complained of was written and delivered to Miss Watson for her private and personal use. It was not intended for the public or any other person except herself, and hence, although it should be held to come within the meaning of the words used in the statute, it would not be punishable under it. Under the statutes of the United States prohibiting the use of the mails for the sending of indecent or obscene writing, pictures, or books it is not material whether it is intended for private or public use. The offense by the terms of the statute is committed when the mail is used for the transmission of the objectionable article; but our statute, fairly interpreted, does not reach this far.

Third. Is the letter obscene, lewd, lascivious, indecent, or disgusting within the meaning of the statute? We think not. The letter is vulgar, but not obscene, foolish, but not lewd, ridiculous, but not indecent, amusing, but not disgusting. What the Legislature had in mind was to prevent the circulation and distribution of printed or written matter that had a tendency to corrupt or deprave the morals of those

persons into whose possession it came, and, as was said in Commonwealth v. Herald Publishing Company, 128 Ky. 424, 108 S. W. 892, 32 Ky. Law Rep. 1293:       ,

"It is difficult to draw the line, in cases of this character, between publications that are permissible and those that come within the condemnation of the statute. Different persons have different views as to what constitutes a lewd, lascivious, or indecent publication. What one would condemn as vulgar, profane or indecent another might look upon as a legitimate and proper record of the news of the day; although all will readily agree that publications that have a tendency to corrupt the morals and deprave the taste of the people should be punished or suppressed. We may therefore safely say that no general rule can be laid down. Each case must be judged by the evidence presented in it; and to the common sense of the courts and juries must be left the question whether or not the matter complained of, considering all the circumstances of its publication, is within the meaning of the statute."

This letter is offensive to good taste. It was improper for the appellant to have written it, and it was well calculated to wound the feelings of Miss Watson, but we can not find anything in the language in the letter either obscene, indecent, or lascivious. It is the product of an illiterate and foolish old man, and is more apt to excite laughter than impure desires or immoral or sensual thoughts. We do not believe that the morals of any person, however open their mind might be to evil influences, could be corrupted by reading this letter, nor is there any thought expressed in it that would have a tendency to create or foster a low or depraved taste. The mere fact that

its composition was reprehensible, and its contents liable to hurt the refined sensibilities of a modest, pure-minded young lady, is not sufficient to bring it within the condemnation of the statute. The words employed in the statute to describe the character of books, writings, or pictures the sale or circulation of which is prohibited have no technical meaning, and are to be understood and applied according to their ordinary and popular usage. Their meaning has been defined in dictionaries, and interpreted by the courts; and the uniform current of opinion is that the test to be applied in determining whether or not a writing, picture, book or paper is objectionable is that it must be of such a character as to deprave or corrupt the minds or morals of the persons into whose hands such matter may come. United States v. Males (D. C.) 51 Fed. 41; United States v. Davis (C. C.) 38 Fed. 326; United States v. Clarke (D. C.) 38 Fed. 732; United States v. Bennett, 24 Fed. Cas. p. 1093; People v. Muller, 96 N. Y. 408, 48 Am. Rep. 635; Dunlop v. United States, 165 U. S. 486, 17 Sup. Ct. 375, 41 Ed. 799. A publication, writing, or picture might be so lascivious or obscene as to shock every sense of common decency, and leave no doubt in the mind of any person of ordinary morality that it would have a tendency to debase and corrupt the thoughts of those into whose hands it might fall. On the other hand, a writing, picture, or paper might be of such a character as to make it a matter of doubt whether it was indecent or obscene, depending upon the mental and moral training and characteristics of the person who came to pass judgment upon it. So that, when there is doubt in the mind of an ordinarily upright, well-balanced person as to whether or not a publication comes within the meaning of the statute,

Kinnaird v. Commonwealth.

it is proper to submit the question to a jury.  But, if, as in the case before us, the matter at first impression, confirmed by more careful consideration, appears to be entirely free from the vice the statute was designed to suppress, the court should either sustain a demurrer to the indictment or direct a verdict of acquittal.

Fourth.  Upon what theory the trial judge admitted to the jury as competent evidence the letters written by the appellant after the indictment had been returned against him, we are not advised.  That these letters were incompetent, and calculated to prejudice the minds of  the jurors, there can be little doubt.  They did not throw light upon any issue in the case.  In fact there was no issue as to the writing and sending of the letter.  These facts were admitted, and the only open question was whether or not it constituted an offense within the meaning of the statute.

Wherefore the judgment of the lower court is reversed, with directions to sustain a demurrer to the indictment.