## Clines, et al. v. Commonwealth.

(Decided October 21, 1927.)

### Appeal from Allen Circuit Court.

1. Larceny.—Under Ky. Stat. section 1161, providing that larceny of bills of exchange shall be felony, and Negotiable Instruments Act (Ky. Stat. 1922, section 3720b-185), providing that a check is a bill of exchange, a check may be a subject of larceny.

2. Larceny.—Indictment for larceny should describe the property stolen with sufficient detail to advise accused with reasonable certainty of the exact charge against him and to enable him to rely on the judgment in bar of a subsequent prosecution for the same offense.

3. Larceny.—On prosecution for larceny of check, unless the check is copied in the indictment, it should be sufficiently described so as to clearly identify and distinguish it so that one prosecution would be a bar to another one based upon the same facts, especially in view of Criminal Code of Practice, section 133.

4. Larceny.—Indictment for larceny charging that defendant stole "one check for the sum of $30.00, same being the procerty of P.," held subject to demurrer for not containing a sufficiently explicit description of the check, especially in view of Criminal Code of Practice, section 133.

5. Criminal Law.—Evidence held insufficient to corroborate testimony of accomplice of larceny, and hence, under Criminal Code of Practice, section 241, it was insufficient to support conviction.

6. Criminal Law.—Under Criminal Code of Practice, section 241, the corroboration of an accomplice, to be sufficient to sustain a con-

viction, must tend to connect the defendant with the commission of the offense, and it is not sufficient if merely showing that the offense was committed and the circumstances thereof.

7. Criminal Law.—Where evidence on issue of whether or not a witness is an accomplice, under Crimial Code of Practice, section 241, is conflicting, the question is for the jury.

8. Criminal Law.—Where evidence that a witness was an accomplice in larceny, within the meaning of Criminal Code of Practice, section 241, was not conflicting, the court should have held that he was an accomplice and should have instructed the jury accordingly.

9. Larceny.—Instruction on larceny trial, under Ky. Stat., section 1161, prescribing punishment in case jury should convict, should conform to statute.

F. R. GOAD and ROBER S. OLIVER for appellants.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing

The appellants, Brady Clines and Walter Gaines, were jointly indicted with Freely Allen by the grand jury of Allen county in which they were accused of the offense of grand larceny, the stolen property being a check for $30.00, alleged to be the property of one Paul Costelow. The appellants were tried separately from the defendant Allen, and they were convicted and punished by confinement for 1 year each in the penitentiary. Their motion for a new trial was overruled, and they have appealed. The only grounds argued for reversal which we regard as of sufficient materiality to require our consideration are (1) insufficiency of the indictment, and error of the court in overruling the demurrer filed thereto, and (2) error of the court in overruling appellants' motion for a directed verdict of acquittal because of insufficiency of the evidence to authorize their conviction.

Ground (1) presents two qestions, which are: (a) Whether a check is a proper subject of larceny; and if so, then (b), whether the indictment in this case sufficiently described it. It is well settled that, at common law, the stealing of a chose in action did not constitute larceny. The text in 36 C. J. 743, par. 26, thus states that principle of the common law:

> "Bonds, bills, and notes and other written instruments promising or directing the payment of

money, were not subjects of larceny at common law, for the technical reason that such instruments were only evidence of a right, and a mere right was not such a thing as could be stolen.''

And on page 737 of the same volume, par. 8, it is said:

"The fourth and last requisite (of the crime of larceny) is that the thing of which the owner is deprived should have corporeal existence; that is, be something the physical presence, quantity, or quality of which is detectable or measurable by the senses or by some mechanical contrivance; for a naked right existing merely in contemplation of law, although it may be very valuable to the person who is entitled to exercise it, is not a subject of larceny; nor, at common law, was the document or record by which this right was evidenced; but under statutes such documents and records are now generally the subject of larceny.''

The same volume on the first page mentioned (743, par. 27) says:

"The rule that instruments evidencing pecuniary obligations are not subjects of larceny has been almost entirely abrogated by statutes which have been enacted in the United States, England, and Canada.''

To the same effect is the text of 17 R. C. L. page 29, par. 33, and standard text-writers announce the same rule, there being no judicial utterance to the contrary. The only statute we have in any wise modifying the common-law rule is section 1161, Carroll's Kentucky Statutes, which says:

"Robbery or larceny of obligations, bonds, deeds, wills, bills obligatory, or bills of exchange promissory notes for the payment of money, paper bills of credit, certificates of deposit of many with any bank or other person, or certificates or obligations granted by the authority of this commonwealth, that of the United States, or any of them, or of account books or receipts, shall be felony; and any person guilty of such felony shall be punished by con-

finement in the penientiary for not less than two nor more than ten years.''

It will be observed that the statute does not, in terms, mention *checks* as a subject of larceny, but it does specify, as such subjects, obligations and bills of exchange, as well as certificates of deposit with any bank or person. Whether a check might be classified as an ''obligation,'' or be included in any of the other specified choses contained in the statute, we need not determine, since we are convinced that after the enactment in 1904 of our Statutes, commonly known as the Negotiable Instruments Act (now chapter 90b of the 1922 edition of Carroll's Statutes), the word ''bills of exchange'' contained in section 1161 include checks drawn by a depositor on a person with whom the deposit is made. Section 3720b-185, which is a part of the Negotiable Instruments Act, says that:

''A check is a bill of exchange drawn on a bank payable on demand.''

We therefore conclude that our statute (section 1161) enlarging the common law so as to include the theft of choses in action, as aided by the definition contained in the Negotiable Instruments Act, makes it larceny to steal a check, and the demurrer to the indictment on this ground was properly overruled.

In considering and determining subdivision (b) of ground (1), i. e., the insufficient description of the check in the indictment, it will be necessary to set forth so much of the indictment as relates to the question. Following the accusatory part of the indictment, its descriptive part is couched in this language:

''The said Clines, Allen, and Gaines heretofore, to-wit, on the ― day ――, A. D. 192....., and before the finding of this indictment in the county aforesaid, did unlawfully, willfully, and feloniously take, steal, and carry away one check for the sum of $30.00, same being the property of Paul Costelow, with the felonious intent to then and there convert the same to their own use and to permanently deprive the said Paul Costelow of the possession thereof and the property therein. Said check being the personal property of Paul Costelow, and being property of value and of a greater value than $20.00.''

It will be observed that the indictment as so drawn contains no description whatever of the alleged stolen check. It gives no date, no drawer, no drawee, nor any payee. It is true that it states that it was the personal property of Costelow, but how it ever became such is not alleged. Whether it was issued directly to him as payee, or whether he became the owner as indorsee or by delivery nowhere appears. In other words, there is absolutely no effort to describe, in the faintest way, the check alleged to have been stolen by the defendants in the indictment. It is a general as well as an infallible rule of criminal procedure that an indictment should be sufficiently explicit, including description of property stolen under the charge of larceny, to advise the accused with reasonable certainty of the accusation he is called upon to meet at the trial, and to enable him to rely on the judgment thereunder in bar of a subsequent prosecution for the same offense. The text in 36 C. J. 813, par 268, so states that rule; and on page 820, par. 283, same volume, with reference to the description of a check when it is the property stolen under statutes making it the subject of larceny, it is said that:

"Indictments for the larceny of checks have been held to be bad unless the particulars of the instrument were stated, or a copy of it was set forth."

In other words, unless the check was copied in hæc verba in the indictment, it should be sufficiently described so as to clearly identify and distinguish it, and so that one prosecution would be a bar to another one based upon the same facts. All courts and all text writers recognize the necessity of such descriptions, and as measured thereby we are convinced that no court would hold the present indictment sufficient in the respects mentioned under the most latitudinous and relaxed rule of criminal pleading, since, as we have seen, there is absolutely no descriptive mark of the alleged stolen check whatever contained in the indictment herein.

Moreover, section 133 of our Criminal Code of Practice says:

"If a written instrument which is the subject of an indictment for forgery, larceny, or other offense, have been withheld, or destroyed by the act or pro-

curement of the defendant, and such destruction, or withholding, be alleged in the indictment, and proved on the trial, a misdescription of the instrument is immaterial.''

The requirement for some sort of description of the written instrument involved in an indictment is thereby recognized, and such description should not only be set forth in the indictment, but accurately so, and the only' exception to the latter requirement is in cases where the written instrument has "been withheld or destroyed by the act or procurement of the defendant," and if so, then the indictment should allege "such destruction or withholding," which must also be proved on the trial.

In the second edition of Roberson's Kentucky Criminal Law and Procedure, published in 1927, section 1762, the learned author in stating his construction of the inserted section of the Code says:

"A person who is charged with the commission of a penal or criminal offense that grows out of a writing, or alteration of a writing made by him, is entitled, under all the rules of criminal procedure, to be informed by an inspection of the indictment of the nature of the charge, so that he may be prepared to meet it; and he cannot have this information unless the writing alleged to have been executed or altered is incorporated (or described) in the indictment. If, however, the writing is lost or destroyed, and for this reason it cannot be set out in the indictment, or if the writing is in the possession of the accused, and for this reason cannot be obtained by the grand jury, it will be sufficient to state the fact, and set out the substance of the writing in words and figures as near as may be done."

In the case of Mount v. Commonwealth, 1 Ky. Op. 345, defendant was indicted for tendering in payment of a debt a known fraudulently altered bank bill or check. The indictment averred the tendered instrument as "an altered bank bill of the Dayton bank," followed by an allegation of the state under which the bank was incorporated. The opinion, after referring to the cases of Commonwealth v. White, 18 B. Mon. 492, and Commonwealth v. Perrigo, 3 Metc. 5, and after stating the

rule regarding the requisite certainty of such descriptions in indictments, said:

"The indictment in this case is obviously defective. It contains no other description of the subject of the alleged offense than that it was 'an altered bank bill of the Dayton bank.' It fails to set out the denomination or state (the) number of the bill, or indeed any such matter or description as to distinguish the bill in question from any bill of the same bank."

In the case of Kinnaird v. Commonwealth, 134 Ky, 575, 121 S. W. 489, the defendant was accused of exhibiting and indecent paper to another. The indictment contained no description of the paper, neither was there a copy inserted therein. The only reference to it in the indictment was the statement that the defendant "did then and there unlawfully show, utter, and give to Miss Edith Watson, an unmarried lady, a certain indiscreet, indecent, obscene, offensive, immoral, and disgusting written article, all of which was written by him." In holding the indictment defective because of insufficient description of the writing which was the subject of the indictment, we said:

"The demurrer to the indictment should have been sustained because it failed to set out the writing, or give any sufficient reason why it was not exhibited with the indictment. The statement that 'the grand jury is not now in possession of said instrument, and for that reason it cannot by filed herewith,' is not sufficient to excuse the failure to set it out in the indictment. The general rule in reference to incorporating in the indictment a writing upon which the indictment is found is that the writing must be set out in the indictment in words and figures unless it has been lost or destroyed, or is in the possession of the accused, or contains matter too abscene or filthy to be perpetuated as a part of the records of a court. Wharton's Criminal Pleadings & Practice, section 166, 202; Bishop's Criminal Procedure, section 509; Commonwealth v. McCance, 164 Mass, 162, 41 N. E. 133, 29 L. R. A. 61; State v. Smith, 17 R. I. 371, 22 A. 282; State v. Hayward, 83 Mo. 299; State v. Brown, 27 Vt. 619; McNair v.

People,, 89 Ill. 441; State v. Zurhost, 75 Ohio St. 232, 79 N. E. 238, 116 Am. St. Rep. (24, 9 Am. & Eng. Ann. Cas. page 45.)

"A person who is charged with the commission of a penal or criminal offense that grows out of a writing, or alteration in a writing, made by him is entitled, under all the rules of criminal procedure, to be informed by an inspection of the indictment of the nature of the charge, so that he may be prepared to meet it; and he cannot have this information unless the writing alleged to have been executed or altered is incorporated in the indictment. If, however, the writing is lost, and for this reason it cannot be set out in the indictment, it will be sufficient to state the fact, and set out the substance of the writing in words and figures as near as may be done, and (likewise,) so, if the writing is in the possession of the accused, and for this reason cannot be obtained by the grand jury."

It is therefore clear that the indictment in this case did not measure up to the requirements of the law, and the demurrer filed thereto should have been sustained.

Ground (2) urged for reversal is bottomed on the fact that the only evidence against appellants was that furnished by Freely Allen, an accomplice, with no corroboration, which, under the provisions of section 241, Criminal Code of Practice, is insufficient to warrant a conviction, and which we are convinced is well taken. Allen testified that he took a letter out of the mail box of Costelow and gave it to one of the appellants, who opened it and found the check therein; that one or the other of appellants carried the check some ten days or two weeks when the three were in Scottsville the Saturday night before Easter, at which time the check was delivered to him with the name of Costelow indorsed on it, and he, at the instance of the others, procured the check to be cashed by a merchant, and he received therefor three $5.00 bills and fifteeen $1.00 bills; that he did not request payment in that way, but that later on he gave each of the appellants a $5.00 bill and five $1.00 bills as their portion of the proceeds. He then told about the three buying a half gallon of moonshine whisky at a cost of $8.00 and he contributed only 50 cents thereto, but seems to have shared equally in its consumption; that on the next morn-

ing the three went to town and bought a gallon of whisky at the price of $16.00 and witness contributed only 50 cents to that, followed by a like equality of consumption. He stated that he rebelled at opening the mail box of Costelow, but that the two appellants threatened his life unless he did so. It furthermore appears in the testimony that Allen, the accomplice, became angry at appellants for having conveyed the information to Costelow that he (Allen) had stolen the check, and which information, according to the uncontradicted testimony in the case, was obtained by appellants long after the check had been stolen and cashed by Allen, and after he had informed appellants of the theft by him when inquiry was made by them as to where and how he was in possession of so much money.

The only two facts proved in the case and relied on by the commonwealth as corroborating Allen's confession to which he tesified at the trial was the one communicating to Costelow by appellants the information above referred to, and which was perfectly consistent with appellants' innocence. The other one was the testimony of two witnesses, who stated that, on the Saturday night one week preceding the date of the cashing of the check by Allen, they saw him in the store of the merchant who cashed it, and the appellants with other boys of their age were standing on the pavement in front of that store. That testimony did not in the remotest degree connect the appellants with the commission of the crime and had no more tendency to establish their guilt than it did that of any other person who may have been on the pavement in front of, or who may have been in the storeroom of the merchant who cashed the check on the day about which the witness testified, which, as we have said, was one week before it was cashed.

Section 241, supra, of the Criminal Code, says, and we have uniformly so held, that the corroboration of an accomplice to be sufficient to sustain a conviction "must tend to connect the defendant with the commission of the offense," and that it "is not sufficient if it merely show that the offense was committed and the circumstances thereof." The only two relied on corroborating facts in this case have no tendency to connect either of the appellants with the commission of the crime and do no more than to "merely show that the offense was committed."

The court therefore erred in not sustaining appellants' motion for a peremptory instruction directing their acquittal.

In view of a possible second trial we deem it proper to notice two other questions presented by the record. The court left it to the jury to determine whether Allen was an accomplice, which is the proper practice where the evidence is conflicting on the issue of accomplice or no accomplice. Commonwealth v. Milburn, 191 Ky. 717, 231 S. W. 502. But here there was no conflict on that issue, and the court should have held that Allen *was* an accomplice and instructed the jury accordingly. The other question is that the punishment, as prescribed in the court's instruction to be inflicted if the jury found defendants guilty, was "confinement in the penitentiary for not less than one, nor more than five years," when the punishment prescribed by section 1161, under which the indictment was necessarily returned, is "for not less than two years nor more than ten years," and if there should be another trial the court will correct its instructions to conform to the statute.

For the errors indicated, the judgment is reversed, with directions to grant the new trial for proceedings consistent with this opinion.