## WILL HOLLAND v. THE STATE.

No. 11903.  Delivered June 20, 1928.
Rehearing granted October 31, 1928.

The opinion states the case.

*Rowe & Rowe* for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

MORROW, PRESIDING JUDGE.—The offense is robbery; punishment fixed at confinement in the penitentiary for a period of twenty-five years.

John Long received a check for $12.50 for work done on the road, and while walking on the public highway was met by an automobile in which four people were riding. The automobile was stopped. A conversation took place, the check was taken from Long, and on the following morning it was found in the possession of the appellant. According to Long's testimony, the appellant (who was driving the car) stopped it and asked Long to contribute twenty-five cents to the church. Long stated that he had no money. Appellant said: "Yes, you have; you have been working on the good roads; you got a check." A man called "Snag" got out of the car and held a club in his hand in a threatening manner over Long while the appellant took the check from his pocket, and caused the indorsement of it. After the check was taken, Long ran and stopped at the house of a white man on his way to town, where he reported the matter and later reported it to the officers. The officers went to the appellant's lodging place, arrested him and found the check in his possession. The officers attempted to arrest Snag but he had escaped. According to the officers, when they called upon the appellant for the check, he gave it to them and said that he did not take it from Long but that Snag did so.

According to the appellant's testimony, he conducted a dance hall and restaurant. Snag was employed by him. Snag, Wyatt, Harris and the appellant were riding in a car and overtook Long on the public road at a place near some water. The car was stopped in order that some water might be put into the radiator. Snag got out of the car to put water in the radiator and while conversing with Long, the appellant asked him if he had any money. Long replied that he had but a nickel. Snag ran his hand in Long's pocket and drew out the nickel, and appellant told him to return it to Long. Snag asked Long if he had any more money, and ran his hand into Long's pocket and got the check. He told Long that he had no use for the check and to get on down the road. Appellant told Snag to return the check. Snag began shoving Long and struck him. Appellant then jumped out of the car and followed them, and Snag handed appellant the check. At that time Long had been driven about sixty yards by Snag and about the time the check was handed to the appellant, Snag picked up a club and hit at Long. Appellant undertook to stop Long but he ran away. Appellant attempted to follow and called to him to stop, but Snag hollered to him to go on. Appellant claimed that his intention was to give the check to Long

and that he kept it for that purpose. He had not seen Long after he ran away until the time of his arrest.

Wyatt and Harris, who were in the car, testified and described the transaction in substance as did the appellant, and in part, at least, corroborated the appellant's testimony with reference to his part in the transaction.

There are some bills of exceptions complaining of the rulings of the court. The first of these is a complaint of the introduction in evidence of the check which was identified as the one that was taken from the injured party and found in the possession of the appellant. The objection urged was that it was immaterial and irrelevant.

In Bill No. 2 complaint is made of the testimony of the injured party describing the check and identifying it, and also stating from whom he got it; also giving his movements with the check up to the time it was taken from him.

Bill No. 3 complains of the testimony of the person who issued the check, his identification of it and his delivering it to Long in time and accord with his version of the affair.

The bills mentioned seem to present no error. The check being the fruit of the alleged crime, it was competent to introduce it in evidence, and the relation of facts touching its possession and acquisition so far as they were detailed were pertinent and proper.

Bill No. 4 complains of leading questions. The questions seem to have been purely preliminary. For example:

"Now, this indictment alleges this was in January, that is right?"

The question does not appear to transgress the rule against leading questions. It appears that no testimony was adduced by way of leading questions. Nor does the bill show that some of the exceptions to the rule excluding the asking of leading questions did not obtain. The bill shows no error.

While upon the witness-stand the appellant was asked by State's counsel if on the morning of his arrest, in the presence of Mr. Kimball and Mr. Hill he did not say to Long: "Boy, you know that I did not have nothing to do with that," and that Long replied: "Yes, you did; you took the check out of my pocket. Yes, you did, you took the check out of my pocket while Snag had a club drawed on me." The appellant replied, "No." After laying the predicate mentioned, the State introduced Kimball, a deputy sheriff, and proved by him that on the morning of the appellant's arrest, in the presence of Long, the conversation inquired about as above stated did take place. Objection was made to the testimony upon the

ground that it was irrelevant, immaterial and inadmissible for any purpose, and highly prejudicial to the defendant's case, and because it was an attempt upon the part of the State, under the guise of an attempted impeachment, to bolster up the evidence mentioned of the witness Long. Appellant introduced some witnesses for the purpose of impeaching the witness Long by contradictory declarations. Huff, one of these witnesses, testified that Long had said to him that Snag, "the piano player" had taken the check from him and turned around and gave it to the appellant. Another witness testified that Long had stated that Snag struck him and took the check away from him, and that appellant called him and asked him to stop.

It is to be noted that no complaint is made of the testimony upon the ground that it was an occurrence while the appellant was under arrest. The appellant having introduced testimony seeking to impeach the witness Long by proof of a declaration inconsistent with his testimony upon the trial, and thereby discredit his testimony, it was competent for the State to support his testimony by proof of a statement consistent with his testimony upon the trial, and the transaction of which complaint is made in Bill No. 5 would seem to come within the rule that a witness might be so supported. See Bailey v. State, 9 Tex. Crim. App. 99; Taylor v. State, 87 Tex. Crim. Rep. 330, and cases collated on page 341.

Bill No. 6, reveals that the appellant's witness, Attrice Harris, gave some favorable testimony to the appellant. He stated that he had taken two drinks of whiskey early in the morning of the day of the trial. State's counsel asked him if it was not a fact that he was drunk at a time soon after the occurrence took place. Against this inquiry, the appellant interposed the objection that it was irrelevant, immaterial and inadmissible. The court permitted the inquiry and also permitted evidence over the objection of the appellant that the witness was drunk. In qualifying the bill, the court states that the witness had testified on direct examination that he was not drunk at any time after the robbery. The State's contention was that he was drunk at the time of the alleged robbery and was still drunk when talked to by Kimball, and did not know what had happened. The bill shows no error.

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—On the original presentation the court was without the asistance of a brief for the appellant. This

is supplied on motion for rehearing, which reflects thought and research. It refers to an attack upon the indictment to which our attention was not heretofore drawn.

The charge is robbery, and in the indictment it is averred in substance that the appellant did "by putting the said John Long in fear of life and bodily injury, fraudulently and without the consent of the said John Long take from the person and possession of him, the said John Long, one check of the value of $12.50, the same being the property of the said John Long."

At common law, choses in action were not the subject of larceny, and robbery is but an aggravated form of theft. See Winston v. State, 9 Tex. Crim. App. 143; Higgins v. State, 19 S. W. Rep. 503; Barton v. State, 88 Tex. Crim. Rep. 368. By statute in many of the states choses in action have become the subject of, theft. In the statutes of this state upon the subject, it is said:

"It embraces every species of personal property capable of being taken." (P. C., 1925, Art. 1411.)

This has been construed to include checks. See Worsham v. State, 56 Tex. Crim. Rep. 253, 18 Amer. & Eng. Ann. Cas., 134; Fulshear v. State, 59 Tex. Crim. Rep. 376. In charging the offense of robbery as in charging larceny or theft, a description of the property taken is essential. Smedley v. State, 30 Tex. Rep. 215; Winston v. State, supra; Higgins v. State, supra; Wharton's Crim. Law., 11th Ed., Vol. 2, sec. 1090, p. 1302; People v. Nolan, 250 Ill. 351, 34 L. R. A. (N. S.), 301. In Calentine's case, 50 Tex. Crim. Rep. 154, this court considered the description necessary in charging the theft of a promissory note and held the indictment insufficient where the property was described as "one promissory note of the value of $31.80." In the recent case of Clines v. Commonwealth, 298 S. W. Rep. 1107, the Supreme Court of Kentucky considered an indictment charging the larceny of a check which was thus described:

" * * * one check for the sum of $30, same being the property of Paul Costelow, * * * said check being the personal property of Paul Costelow, and being property of value of a greater value than $20."

In the course of the opinion holding the indictment bad, the court gave this expression:

"It will be observed that the indictment as so drawn contains no description whatever of the alleged stolen check. It gives no date, no drawer, no drawee, nor any payee. It is true that it states that it was the personal property of Costelow, but how it ever became

such is not alleged. Whether it was issued directly to him as payee, or whether he became the owner as indorsee or by delivery nowhere appears. In other words, there is absolutely no effort to describe, in the faintest way, the check alleged to have been stolen by the defendants in the indictment. It is a general as well as an infallible rule of criminal procedure that an indictment should be sufficiently explicit, including description of property stolen under the charge of larceny, to advise the accused with reasonable certainty of the·accusation he is called upon to meet at the trial, and to enable him to rely on the judgment thereunder in bar of a subsequent prosecution for the same offense."

In the present record, the insufficiency of the description of the check is such as to render erroneous the action of the court in overruling the motion to quash the indictment. For that reason, the motion for rehearing is granted, the affirmance is set aside, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*