## King v. Commonwealth.

October 24, 1950.

Ray L. Murphy, Judge.

742

Davies & Hirschfeld for appellant.

A. E. Funk, Attorney General, John B. Browning, Assistant Attorney General, for appellee.

JUDGE HELM—Affirming.

Appellant, David King, charged with the offense of having in his possession with intent to sell, lend, give away or show, obscene magazines of an indecent character, in violation of KRS 436.100, was found guilty and his punishment fixed at a fine of $500. He appeals, maintaining that: (1) The court erred in overruling appellant's demurrer to the indictment; (2) the court erred in overruling the motion of appellant to require the Commonwealth to elect; (3) the court erred in overruling appellant's motion for a directed verdict; and (4) the verdict of the jury is flagrantly against the weight of the evidence.

"The indictment is in three counts, charging the same offense in each." The first count charges the commission of the offense as to the magazine "Sunshine and Health," a nudist magazine of November, 1949 issue; the second count charges the offense as to the magazine "Modern Sun Bathing and Hygiene," March, 1949 issue; the third count charges the offense as to the magazine "Eyeful," October issue.

Dave Donnelly, Chief of Detectives of the City of Newport, at the request of the Chief of Police of that city, went to appellant's news stand in Newport and obtained the magazines "Sunshine and Health" and "Eyeful," which were admitted in evidence. The

magazine "Sunshine and Health" was "stapled in two places."

Leo Stauber, 18, at the request of Mr. Montag, went to appellant's news stand and obtained the magazine "Modern Sun Bathing and Hygiene," which was stapled. It was admitted in evidence.

Joseph Montag, a member of the "Legion of Decency," a group engaged in making investigation of the type of magazines on sale in the city, sent Leo Stauber to the news stand to obtain the magazine.

In the nudist magazine are numerous photographs of men, women, and children playing, working, and eating together in the nude.

Appellant has a news stand in Newport and another in Cincinnati. He says, "I try to handle everything readable; in other words, I subscribe or take every periodical I can get hold of. It doesn't make any difference what kind—I try to get everything. Sometimes one reader wants one thing and one another." He admits having the magazines in question. He obtained them from distributors. He stapled the pages of the nudist magazine to prevent people from turning through them, looking at the pictures, and putting them back without buying them.

The indictment is substantially in the words of the statute. This is sufficient. 11 Ky. Digest, Indictment and Information, Key 110(3). The court properly overruled the demurrer.

Appellant was charged with having obscene magazines for sale. The indictment is perhaps inaptly drawn, but it charges but one offense. Nichols v. Commonwealth, 78 Ky. 180. Here but one offense was charged; that set out in the part of KRS 436.100 hereinafter quoted.

We do not have, as appellant maintains, such an indictment as that described in Caudill v. Commonwealth, 202 Ky. 730, 261 S.W. 253, where under the liquor law several different offenses were charged in one indictment.

Appellant insists that the court should have sustained his motion for a directed verdict.

KRS 436.100 provides: "Any person who * * * has in his possession with intent to sell, lend, give away or show, * * * any obscene or disgusting book, magazine, pamphlet, newspaper, writing, picture, drawing, photograph, figure or image, or any written or printed matter of an indecent character, * * * shall be fined not less than fifty dollars nor more than one thousand dollars, or imprisoned for not less than ten days nor more than one year, or both."

In 33 Am.Jur., page 17, it is said:

"Obscenity was indictable at common law, on the ground that what tended to corrupt society amounted to a breach of the peace, and various acts and forms of obscenity are made criminal offenses by statute or ordinance. The word obscenity cannot be said to be a technical term of the law and is not susceptible of exact definition in its judicial uses, although it has been defined in a general sense as meaning offensive to morality or chastity, indecent, or nasty. * * *

"The word 'indecent' is a common and general one. As ordinarily understood, it includes anything which is lewd or lascivious, obscene or grossly vulgar, unbecoming, unseemly, unfit to be seen or heard, * * *."

In 33 Am.Jur., page 20, it is said: "While the statutes relating to obscenity do not generally undertake to define obscene or indecent pictures or publications, nevertheless the words usually employed in the statutes are themselves descriptive, being words in common use and readily understood by persons of ordinary intelligence. * * *"

In Commonwealth v. Calloway, 171 Ky. 521, 188 S.W. 628, we said: " 'The test which determines the obscenity or indecency of a publication is the tendency of the matter to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands such a publication may fall. * * *.' "

In 33 Am. Jur., page 21, it is said: "The test which is substantially followed and accepted by most of the courts in determining whether a book is obscene within a prohibitory statute is whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands such a book may fall. * * *"

In Kinnaird v. Commonwealth, 134 Ky. 575, 121 S.W. 489, 494, we said: "* * * A publication, writing, or picture might be so lascivious or obscene as to shock every sense of common decency, and leave no doubt in the mind of any person of ordinary morality that it would have a tendency to debase and corrupt the thoughts of those into whose hands it might fall. On the other hand, a writing, picture, or paper might be of such a character as to make it a matter of doubt whether it was indecent or obscene, depending upon the mental and moral training and characteristics of the person who came to pass judgment upon it. So that, when there is doubt in the mind of an ordinarily upright, well-balanced person as to whether or not a publication comes within the meaning of the statute, it is proper to submit the question to a jury. But if, as in the case before us, the matter at first impression, confirmed by more careful consideration, appears to be entirely free from the vice the statute was designed to suppress, the court should either sustain a demurrer to the indictment or direct a verdict of acquittal."

In the light of the above rules, and after an examination of the record and exhibits, especially the nudist magazine "Sunshine and Health," we are of the opinion that this case comes within the second class of cases referred to in the above quotation from Kinnaird v. Commonwealth. The jury of men and women hearing the case, we assume consisted of people representing a fair cross section of the community in which the magazines were offered for sale. We believe the trial court properly submitted this case to the jury, and that the verdict of the jury is sustained by the evidence.

The judgment is affirmed.