Victor Birch MANKIN, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 42382.

Court of Criminal Appeals of Texas.

Jan. 21, 1970.

On Rehearing March 11, 1970.

Paul Donald, Bowie, Sewell & Forbis, Decatur, for appellant.

Marvin, F. London, County Atty., Montague, and Jim D. Vollers, State's Atty. Austin, for the State.

OPINION

WOODLEY, Presiding Judge.

The offense is robbery with firearms; the punishment, 25 years.

Trial was before a jury on a plea of not guilty. The state did not seek the death penalty. Upon election of the defendant, the jury assessed the punishment.

Eight grounds of error are set forth in appellant's brief, one of which (Ground No. 7) complains that the evidence is insufficient to sustain the conviction.

The record reflects that James Hudson was night operator of the Handy Grocery in Bowie, Montague County. About 10 P. M. on the night of December 4, 1968, Ronnie Hogue and appellant entered the store. After standing over by the rack on which record albums were displayed talking among themselves, appellant came to the counter where Hudson was waiting on customers and said he wanted a transistor battery for his radio. Hudson asked him what size and appellant said he would have to go to the car and see, and he went outside. He came back into the store and returned to the record rack where Ronnie Hogue was, and "they went back to talking."

As the customers Hudson had been talking to were going out the front door, Hudson was "jabbed in the back" by an army .45 pistol in the hand of Ronnie Hogue who said: "This is a stick-up, and we would

just as soon to kill you as to look at you." Appellant, who was standing next to Hogue, said "Yeah, we are going to kill you. You get that money together."

The complainant Hudson told them they could have the money, got the money sack and took the money out of both cash registers and put the money and "a bunch of those album records that we sell at the store," which they had brought from the record rack to the counter, in the money sack for them.

Hudson was then required to go in the back room and to lie down on the floor on his stomach and put his hands behind him. His hands and feet were wrapped with adhesive tape and tape was put across his mouth and he was beaten about the head and seriously injured.

He testified that after the first lick he did not remember anything for ten days and when he regained consciousness he was in a hospital in Wichita Falls, where he remained nearly three weeks. He was then returned to the hospital in Bowie where he remained nearly four weeks.

About 9 o'clock on the morning after the robbery, officers in Joplin, Missouri, stopped appellant's 1957 Chevrolet Sedan being driven by appellant, in which Ronnie Hogue was one of the occupants.

Officer Bob Clifton stopped the car. Officer Paul Bowlby was in his vehicle directly behind Officer Clifton when the stop was made.

Officer Bowlby testified that he was at all times within hearing distance and clear vision of Officer Clifton and the occupants of the car; that he saw Officer Clifton walk up to the left front of the car and talk to appellant who was driving. Officer Clifton had appellant get out and Bowlby heard them talking about "the registration to the car, the title, and the driver's license." He further testified that later all of the occupants of the car were placed under arrest and "We got them out of the car after they were placed under arrest.

They had all been arrested in reference to the alcoholic beverages that they had, and he (Ronnie Hogue) just went wild over being arrested."

"Q. Did you take him under arrest?

"A. Well, he was under arrest. We had them get out of the car, and was preparing an initial search of the person for, well, for weapons incidental to the arrest because we were going to load them up and take them in to the Police Headquarters.

"Q. What did the man pictured in State's Exhibit 1, the man other than the defendant; what, if anything, did you do when you attempted to take physical control of him?

"A. Well, we lined them up, or Officer Clifton lined them up to search them.

"Q. Where did he line them up?

"A. Well, there was a signboard or kind of a bill-board that was close to the street there, and he had them place their hands on the bill-board for safety sake in searching the persons, and the man here who was a passenger in the right front, he continued to be belligerent, up-set about the matter.

"MR. SEWELL: You know that man's name, don't you?

"A. His name is Mr. Hogue. Mr. Hogue gave us quite a bit of trouble, and as he was preparing to search him, he pulled a gun on the—

"Q. What kind of a gun was it?

"A. .45 automatic.

"Q. Then what did he do, if anything?

"A. Well, he throwed it in the stomach of the other Officer, Clifton, and shot him.

"Q. Do you know how much distance there was between them when he shot him?

"MR. SEWELL: Your Honor, will our objection go to all this, as irrelevant and immaterial as to this defendant?

"THE COURT: Yes, sir.

"Q. About how much distance was there between Officer Clifton and Hogue at the time of this shooting?

"A. There was just a few inches. It was just right point-blank, or close.

"Q. Where were you at the time of this shooting?

"A. I was back probably five or six feet.

"Q. Then what did you do, if anything?

"A. Well, Hogue turned on me, and I shot him.

"Q. What were the other occupants of the car doing in the meantime?

"A. Well, they were standing over to the right, probably six or seven feet, just looking."

Appellant was positively identified and Hogue was identified by photographs as the robbers and as the driver and occupants of appellant's automobile stopped the next morning in Joplin, Missouri. The wristwatch Hogue was wearing and which was taken from his wrist after his death, was identified as belonging to the complainant and taken from him in the robbery.

A search of appellant's automobile made after Officer Clifton was shot and killed by Hogue, revealed money scattered over the floor and record albums such as were placed in the money sack by the complainant. The total amount of money found in the possession of the occupants and in appellant's car approached the total amount

missing from the cash registers after the robbery.

We find the evidence sufficient to sustain the conviction of appellant as a principal in the robbery.

■ Ground of error No. 1 complains that the court erred in admitting the testimony of Officer Bowlby as to the killing of Police Officer Clifton, in Joplin, Missouri, by Ronnie Hogue the day after the robbery.

Evidence of flight and resistance to arrest of the co-actors in the robbery res gestae of the arrest in Joplin, Missouri, was admissible. Johnson v. State, 156 Tex.Cr.R. 534, 244 S.W.2d 235. Appellant knew that Hogue was armed with a pistol and gave no warning to the officer. Had he done so, the killing of both Officer Clifton and his co-principal Hogue could have been avoided. Had Hogue succeeded in slaying both of the Joplin Police Officers, the flight of the two robbers would not have ended when it did.

Ground of error No. 2 complains that the court erred in admitting, over appellant's objection, the fruits of the search of appellant and of his automobile, which evidence should have been excluded because produced by an illegal search.

■ The record reflects that neither appellant nor the automobile was searched until after Officer Clifton was shot and killed, and all of the occupants of the car had been placed under arrest.

Appellant was searched after Hogue was mortally wounded and other officers had arrived, and some money and some .45 ammunition were found on his person.

The trial court did not err in admitting the evidence obtained as a result of the searches.

■ Ground of error No. 3 complains that the court permitted counsel for the state to argue that appellant was responsible for Officer Clifton's death and to allude to the death of Officer Clifton.

We find no merit in this ground of error.

■ Ground of error No. 4 complains that the court erred in failing to charge the jury on the converse of "principals" and in making the charge on principals on the facts unduly repetitive to the prejudice of appellant's rights.

We do not find in appellant's objections to the charge any reference to the failure to charge on the converse of the law of principals—nor do we find merit in this ground of error.

■ Ground of error No. 5 complains that the court erred in failing to change venue of the case.

The motion for change of venue was supported only by the affidavit of his attorney.

Under the record, we find no abuse of discretion in the court's failure to change the venue.

■ Ground of error No. 6 complains that the court erred in permitting the state's witness Conway to remain in the courtroom during the trial, after appellant had invoked the rule.

Conway was a deputy sheriff assigned to guard the prisoner.

Appellant concedes that the matter of excusing the deputy sheriff from the rule was discretionary with the trial judge. We find no abuse of such discretion.

■ The remaining ground of error (Ground No. 8) is that appellant is entitled to a new trial by reason of the fact that at the hearing on punishment the state was permitted to introduce evidence of a conviction of appellant for violation of the Marijuana Tax Act, 26 U.S.C. Sec. 4744(a) (2), in Federal Court as a youth offender.

Reliance is had upon the opinion of the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57, handed down May 19, 1969, since this case was tried.

The conviction proved as a part of appellant's criminal record was on a plea of guilty. The judgment dated November 19, 1965, found appellant a youth offender, adjudged him guilty and suspended imposition of sentence for five years.

In Leary v. United States, supra, the Supreme Court concluded that a timely and proper assertion of the privilege against self-incrimination should provide a complete defense to prosecution under 26 U.S.C. Sec. 4744(a) (2), and held that the petitioner's (Leary's) invoking of the privilege was proper and that it should have provided a full defense and accordingly Leary's conviction under said Article was reversed.

In the case at bar, the conviction was upon a plea of guilty and the privilege was not asserted. The evidence of such conviction was admitted without objection.

The ground of error is overruled.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Presiding Judge.

In his amended motion for rehearing appellant, for the first time, asserts as ground for reversal that the indictment rendered against him, upon which he was convicted, is · fundamentally defective in that nowhere therein is there a description of the property taken other than "corporeal personal property."

■ While the rule as to sufficiency of an indictment to advise the accused with reasonable certainty of the accusation he is called upon to meet at the trial is not applied in later decisions of this court as strictly as it once was, the common law rule that robbery is but an aggravated form of theft, and that in charging the offense or robbery, as in charging larceny or theft, a description of the property taken is essential has been uniformly applied. Wilson v. State, 171 Tex.Cr.R. 391, 356 S.W. 2d 928; Holland v. State, 110 Tex.Cr.R. 384, 10 S.W.2d 561, and cases cited.

■ The indictment which is found in the record on appeal contains *no* description of the corporeal personal property alleged to have been taken in the robbery.

Wilson v. State, supra, is directly in point and supports appellant's contention that the indictment herein is fundamentally defective and the conviction thereon cannot stand.

Appellant's motion for rehearing is granted, the affirmance is set aside, the judgment is reversed and the cause remanded.