STATE OF MISSOURI, Respondent, v. HAROLD BECKER, Appellant, No. 44449—272 S. W. (2d) 283.

Division One, October 11, 1954.

Motion for Rehearing or to Transfer to Banc Overruled, November 8, 1954.

*Morris A. Shenker* and *Sidney M. Glazer* for appellant.

*John M. Dalton,* Attorney General, and *Robert R. Welborn,* Assistant Attorney General, for respondent.

*William J. Geekie,* Prosecuting Attorney, and *Jasper R. Vettori,* Assistant Prosecuting Attorney, for respondent.

1082

 CONKLING, J.—Harold Becker, defendant, appealed from a judgment of the St. Louis Court of Criminal Correction finding him guilty of a violation of Section 563.280, RSMo. 1949, V.A.M.S. That section, among other thing, makes it an offense to possess with intent to sell or circulate any obscene, lewd, licentious, indecent or lascivious pamphlet, paper, picture, photograph or other publication of an indecent, immoral or scandalous character. The Information filed charged defendant with having in his possession, with intent to sell and circulate, "certain obscene, indecent, scandalous, and immoral publications, to wit: 648 Publications entitled 'Solaire Universalle De Nudisme, Vol. 1, No. 5' and 195 (publications) entitled 'Sunshine and Health' the same containing pictures and photographs of men, women and children in the nude with private parts completely depicted including the pubic hair." The cause was tried to the court without a jury. Upon a finding and judgment of guilt, the trial court assessed a fine of $100. Sentence was imposed and defendant appealed to the St. Louis Court of Appeals. That court transferred the cause here upon constitutional grounds. Constitution of Missouri, Article V, Section 3.

██ The Attorney-General has filed a motion to transfer the cause back to the above Court of Appeals. We first consider that motion. While the Attorney-General instantly insists that the cause should be transferred to the St. Louis Court of Appeals because no substantial constitutional question has been presented which would confer jurisdiction upon this Court, we are not persuaded to that view. Defendant raised below at the first opportunity and has contended throughout the case that Section 563.280, supra, is violative of the due process provisions of the State and Federal Constitutions because "it is too vague and indefinite to provide an ascertainable standard of guilt." The attack made on the statute presents a constitutional question which vested this Court with jurisdiction of this cause. The motion to transfer the cause to the St. Louis Court of Appeals is accordingly overruled.

██ It is first contended by defendant that the trial court erred in refusing to enter a judgment for his acquittal. Defendant asserts that the evidence of record is legally insufficient to sustain the judg-

ment of guilt and conviction. A copy of each of the publications or magazines mentioned in the Information were before the trial court as exhibits and have been filed in this Court. It appears from the record that defendant conceded that he had the 648 copies of "Solaire Universalle De Nudisme" and the 195 copies of "Sunshine and Health" in his possession with the intent to sell and circulate them. The above publications do contain many "pictures and photographs of men, women and children in the nude with private parts completely depicted."

Neither the pictures in nor the texts of the above publications can be here reproduced. It is sufficient to here state that some of the photographs are nude pictures of young but mature persons of each sex alone, and some are of both women and men together in the nude. Some of the pictures are of many (30 to 50) nude men and women and children in a single picture. Other photographs of men and women are in various nude and suggestive postures. The printed matter in the above publications is in the nature of propaganda to nudism; contains reports of nudist gatherings where Saturday night dances of nude men and women are held, and where "mature boys and girls swim, stroll, play volley ball and badminton as if they were fully clothed"; contains letters from and testimonials of nudists one of which contains a suggestive and sensual verse; and contains reports of raids on nudist colonies, and pleas for contributions to defense funds, etc. The above is fairly and sufficiently indicative of the contents of the publications in question.

Defendant's brief asserts that the first issue to be decided in this case is whether the instant publications are "obscene, lewd, licentious, indecent or lascivious or of an indecent, immoral or scandalous character." A determination of that question will rule defendant's first contention and assignment of error.

In the case of State v. Mac Sales Co., Mo. App., 263 S. W. (2) 860, l. c. 863, the St. Louis Court of Appeals stated: "With reference to (4), supra, one test of obscenity is whether the article in question tends to deprave and corrupt the morals by inciting lascivious thoughts or arousing the lustful desire of those whose minds are open to such influences and into whose hands such a publication may fall. 33 Am. Jur., Lewdness, Indecency and Obscenity, Sec. 4, p. 17, 67 C.J.S., Obscenity, Sec. 7c, p. 30 et seq. We have defined obscenity as 'such indecency as is calculated to promote the violation of the law and the general corruption of morals * * * and include what is foul and indecent, as well as immodest, or calculated to excite impure desires.' State v. Pfenninger, 76 Mo. App. 313."

The test of obscenity is set forth in 67 C.J.S., Obscenity, Section 7, page 30, as follows: "The test which determines the obscenity or indecency of a publication is the tendency of the matter to deprave and corrupt the morals by inciting the lascivious thoughts or arousing

1084

the lustful desire of those whose minds are open to such influences, and into whose hands such a publication may fall. * * *"

A test frequently relied upon by courts in this country is that stated by Cockburn, Ch.J., in the case of Reg. v. Hicklin (1868) L.R. 3 Q.B. 360, 371, 8 Eng. Rul. Cas. 60: "I think the test of obscenity is this: whether the tendency of the matter charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall."

In United States v. Harmon, 45 Fed. 414, l. c. 417, the court, in discussing the statute prohibiting the use of the mails for obscene matter, stated: "Laws of this character are made for society in the aggregate, and not in particular. So, while there may be individuals and societies of men and women of peculiar notions or idiosyncrasies, whose moral sense would neither be depraved nor offended by the publication now under consideration, yet the exceptional sensibility, or want of sensibility, of such cannot be allowed as a standard by which its obscenity or indecency is to be tested. Rather is the test, What is the judgment of the aggregate sense of the community reached by it? What is its probable, reasonable effect on ▮▮▮▮ the sense of decency, purity, and chastity of society, extending to the family, made up of men and women, young boys and girls, * * *."

See also, King v. Commonwealth, 313 Ky. 741, 233 S. W. (2) 522, Commonwealth v. Donaducy, 167 Pa. Super. 611, 76 Atl. (2) 440, 442, Commonwealth v. New, 142 Pa. Super. 358, 16 Atl. (2) 437, State v. Weitershausen, 11 N.J. Super. 487, 78 Atl. (2) 595, People v. Eagle, 117 N. Y. Supp. (2) 380, 203 Misc. 598, People v. Ring, 267 Mich. 657, 255 N.W. 373, 375, 93 A.L.R. 993, and cases collected in 29 Words and Phrases, Perm. Ed., Obscene, page 68, et seq.

It is our duty and responsibility to determine whether these publications are obscene, lewd, lascivious, licentious, and of a scandalous, indecent or immoral character. It seems clear to us that they are. Even judges may know what falls within the classification of the decent, the chaste and the pure in either social life or in publications, and what must be deemed obscene and lewd and immoral and scandalous and lascivious. These questions have been considered and tested objectively as to the effect of these publications in their entirety upon persons of average human instincts. The people of this State speaking with their constitutional voice, the General Assembly, enacted this statutory proscription of obscenity for the protection of all the people of the State. Under this statute and the prior rulings of the courts we may not disregard an unambiguous enactment which has as its obvious purpose the protection of the morals of the susceptible into whose hands these publications may come. While we recognize that morality may not be attained by legislation, a people nonetheless need and deserve a moral standard and the protection and enforcement of such a statute. After applying the required tests all the members of this

Court have concluded that the contents of these publications tend to incite lascivious thoughts, arouse lustful desire, encourage breaches of the law, and promote and encourage commission of crime, law violation and moral decay. Defendant's first contention is therefore denied.

In support of his first contention defendant relies upon and cites to us such cases as Parmelee v. United States, 113 Fed. (2) 729, United States v. One Book Entitled Ulysses, 72 Fed. (2) 705, State v. Lerner, Ohio, 81 N. E. (2) 282, and People v. Burke, 276 N. Y. Supp. 402. We have examined all the cases cited by defendant but must decline to follow them. The apparent rationale of those and other cases which reach a conclusion contrary to that we have above expressed seems to us to be confounded of confusion and artificialities, and seems not to have considered certain basic concepts and teachings which we deem important. Some opinion writers have variously defined obscenity as a "Function of many variables" and also as, "The present critical point in the compromise between candor and shame at which the community may have arrived here and now." Another writer has stated that the word "obscene" is not susceptible of exact definition because "Such intangible moral concepts as it purports to connote vary in meaning from one time to another." It is difficult to follow the reasoning of some of the cases cited by defendant.

In any event, we live today in a clothed civilization. The people of Missouri exercised the State's sovereign police power in enacting this statute, and we may not by judicial fiat invade the legislative function and rule that the people of Missouri did not mean what this unambiguous statute so exactly and solemnly declares, and in so ruling be untrue to our responsibility and to the public trust reposed in us.

■ Defendant next contends that the court erred in excluding the offered testimony of a certain college professor, who held certain degrees in psychology and philosophy, that the instant publications were not obscene, lewd, licentious, lascivious, indecent, and of an indecent, immoral and scandalous character. Defendant asserts ■ that the professor witness was qualified as an expert in this field and asserts also that the testimony rejected was within the proper scope of expert testimony in this case. We rule that the trial court did not err in excluding the offered testimony.

We need not here consider or discuss the claimed qualifications of the witness for we must rule that the subject matter of the excluded testimony was not within the proper scope of any expert testimony in this case. Under the instant facts the learned trial court had the responsibility under the law of ruling whether the publications came within the prohibitions of the statute, and he knew far better than any lay professor when, under the statute controlling judicial decisions, the publications were in fact and in law obscene and immoral. Section 563.280 does not define the words "obscene, lewd, licentious,

indecent or lascivious, * * * immoral or scandalous," but those words are themselves descriptive. They are words of common usage and most every person, (and certainly the trial judge) understands their meaning. The trial judge was capable of applying their legal and lay meaning to these publications. No college professor or other expert was required to determine whether these publications are obscene and offensive to good morals, or might arouse lustful desires, or encourage commission of crime by the susceptible man or woman, boy or girl. The issue being tried was whether the instant publications were obscene and immoral, and while defendant was entitled to prove any fact legitimately bearing upon such issue, defendant could not substitute the claimed expert witness's opinion thereon for the ultimate fact which the trial court was compelled to find and rule. This contention must be denied. McAnany v. Henrici, 238 Mo. 103, 141 S. W. 633, People v. Muller, 96 N. Y. 408.

We come now to defendant's contention that the statute in question here is too vague and indefinite, and fails to set up an ascertainable standard of guilt, and that it therefore contravenes both the State and Federal due process provisions. Missouri Constitution, Article I, Section 10, and the Fourteenth Amendment of the Federal Constitution. The exact contention, simply stated, is that the statute is so void of meaning that no person, even one who desired to obey the statute, could fairly be sure whether he was doing that which the statute prohibited.

The instant Information charges that defendant possessed, with intent to sell and circulate, "certain obscene, indecent, scandalous and immoral publications, to wit, 648 Publications entitled 'Solaire Universalle De Nudisme' and 195 entitled 'Sunshine and Health,' " etc. Defendant now specifically contends that the statute is so vague and indefinite as to provide no ascertainable standard of guilt because the statute includes therein the words, "indecent, immoral or scandalous." Defendant does not contend that the statute is vague or indefinite because it uses the words "obscene, lewd, licentious or lascivious."

It may be conceded that a crime must be defined with sufficient definiteness that there be ascertainable standards of guilt to inform those subject thereto as to what conduct will render them liable to punishment thereunder. Ex parte Hunn, 357 Mo. 256, 207 S. W. (2) 468, Winters v. New York, 333 U. S. 507, 68 S. Ct. 665, 92 L. Ed. 840.

The words "indecent, immoral or scandalous" as used in this statute, and particularly as used therein in connection with the words "obscene, lewd, licentious and lascivious," are not words of hidden or obscure or uncertain meaning. Those words are not technical terms of the law. The word "indecent" is a common word of common understanding. It has been defined to mean unfit to be seen or heard; immodest; gross; obscene; offending against modesty and less than im-

modest; that which would arouse lewd or lascivious thoughts in the susceptible. People v. Eastman, 188 N. Y. 478, 81 N. E. 459, 460, Wood v. State, 45 Ga. App. 783, 165 S. E. 908, 911, Duncan v. United States, 48 Fed. (2) 128, 132, Webster's New International Dictionary, ▮▮▮ United States v. Chesman, 19 Fed. 497, United States v. Clarke, 38 Fed. 500. The word "immoral" is likewise a word of common understanding. It means hostile to the welfare of the general public; morally evil, impure, vicious or dissolute; licentious misconduct. Jones v. Poole, 62 Ga. App. 309, 8 S. E. (2) 532, Warkentin v. Kleinwachter, 166 Okla. 218, 27 Pac. (2) 160, People ex rel. etc. v. Dever, 242 Ill. App. 1., United States v. One Book Entitled "Contraception," 51 Fed. (2) 525. The word "scandalous'" as used in the statute in connection with the words "obscene, lewd, licentious, lascivious, immoral" means shocking to decency or propriety, offensive, disreputable. Webster gives as synonyms of "scandalous," the words detestable, base, vile, shameful. Polson v. Polson, 140 Ind. 310, 39 N. E. 498, 499, In re Riverbank Canning Co., 95 Fed. (2) 327.

The words of the statute "obscene, lewd, licentious, indecent, lascivious, immoral, scandalous" are used therein as descriptive of the character of the publication prohibited to be possessed with intent to sell or circulate, are all synonymous and of similar meaning. Those descriptive words are neither vague nor indefinite. They are words of common usage and understanding, and as used in this statute, and in law, they have a meaning understood by all. Those words set out within this statute a clear and ascertainable standard of guilt which is readily to be comprehended. The statute as a whole, when read and considered in its entire text and subject matter, is so clear and unequivocal and so understandable and certain that no person of common intelligence would be compelled to guess at its meaning and purpose. The standard of guilt is obvious from a reading of the statute. In any event, statutes of this character, enacted for the clear purpose of eliminating certain evils and certain crimes against the person which publications of this character unquestionably tend to promote, are allowed a degree of permissible uncertainty in the use of such words as obscene, lewd, lascivious, indecent, immoral and scandalous. Winters v. New York, supra. Such allowance of uncertainty stems from the fact that the above words are well understod by everyone through long and continued use in the criminal law.

But we rule that the statute clearly limits punishment to possession with intent to sell or circulate publications which are obscene, indecent, immoral, scandalous, lewd, licentious or lascivious, as those words were formerly used and have always been understood.

In Fox v. State of Washington, 236 U. S. 273, 35 S. Ct. 383, 59 L. Ed. 573, the United States Supreme Court considered a statute of the State of Washington directed against printed matter tending to encourage and advocate disrespect for law. It was there contended

1088

that the statute was too vague for a criminal law in that it contained no ascertainable standards of guilt. Mr. Justice Holmes, writing the unanimous opinion of the Court, inter alia, said: "If the statute should be construed as going no farther than it is necessary to go in order to bring the defendant within it, there is no trouble with it for want of definiteness. See Nash v. United States, 229 U. S. 373, 57 L. Ed. 1232, 33 S. Ct. 780; International Harvester Company v. Kentucky, 234 U. S. 216, 58 L. Ed. 1284, 34 S. Ct. 853."

Defendant's contention that the statute in question here is too vague and indefinite and fails to set up an ascertainable standard of guilt must be denied.

■ Defendant's last contention is that the statute in question offends the Federal Constitution in that it impairs the right of free speech. Defendant's brief, however, concedes that an obscene publication may be forbidden without violating either the due process or free speech provisions of the Constitution. See, Near v. State of Minnesota, 283 U. S. 697, 51 S. Ct. 625, 75 L. Ed. 1357, Chaplinsky v. State of New Hampshire, 315 U. S. 568, 571, 62 S. Ct. 766, 769, 86 L. Ed. 1031. It has been long held that the right of freedom of speech is subject to the state's ■ right to exercise its inherent police power. The right of free speech is not an absolute right at all times and under all circumstances. Such right does not include the right to possess with intention to sell and circulate any lewd, obscene, indecent, scandalous and immoral publication which, as we have above held, tends to incite lascivious thoughts and arouse lustful desire, encourage breaches of the law and promote crime and moral decay.

In Winters v. New York, supra, in the last paragraph of the opinion (92 L. Ed. 1. c. 852) the United States Supreme Court referred to a New York statute which prohibited a person to have in "his possession with intent to sell (or distribute) any obscene, lewd, lascivious, filthy, indecent or disgusting" publication. That New York statute is substantially the Missouri statute now in question here. The majority of the court in the Winters case stated that their ruling in that case "* * * carries no implication that it ( a state) may not punish circulation of objectionable printed matter, assuming it is not protected by the principles of the first Amendment, by the use of apt words to describe the prohibited publications. Section 1141, subsection 1, quoted in note 2, (the New York statute similar to the instant Missouri statute) is an example. Neither the states nor Congress are prevented by the requirement of specificity from carrying out their duty of eliminating evils to which, in their judgment, such publications give rise."

We have examined all the cases cited by defendant and find they are not determinative of the questions now before us. The contention of defendant that this instant statute offends the Federal Constitution

by impairing the right of free speech must be overruled. Chaplinsky v. New Hampshire, supra, Winters v. New York, supra.

The judgment appealed from must be affirmed. It is so ordered. All concur.