In re SEARCH WARRANT OF PROPERTY
AT 5 WEST 12TH STREET, KANSAS
CITY, MISSOURI,

v.

William MARCUS and Title News Company.

In re SEARCH WARRANT OF PROPERTY
AT 3105 EUCLID, KANSAS CITY,
MISSOURI,

v.

Jack K. RAYBURN and Ted's News Shop.

In re SEARCH WARRANT OF PROPERTY
AT 1 EAST 39TH STREET, KANSAS
CITY, MISSOURI,

v.

Harvey HAMMER and Town Book Store.

In re SEARCH WARRANT OF PROPERTY
AT 123 EAST 12TH STREET, KANSAS
CITY, MISSOURI,

v.

Harvey HAMMER and Ruback's News
Stand.

In re SEARCH WARRANT OF PROPERTY
AT 104 EAST 10TH STREET, KANSAS
CITY, MISSOURI,

v.

Homer SMAY and Kansas City News
Distributors.

In re SEARCH WARRANT OF PROPERTY
AT 221 EAST 12TH STREET, KANSAS
CITY, MISSOURI,

v.

Jack GORDON.

Nos. 46900–46905.

Supreme Court of Missouri,

En Banc.

March 14, 1960.

Rehearing Denied April 11, 1960.

Morris A. Shenker, Sidney M. Glazer, Bernard J. Mellman, St. Louis, Attorneys for Appellants.

Louis Wagner, Kansas City, for appellants Harvey Hammer, Ruback's News Stand and Town Book Store.

John M. Dalton, Atty. Gen., Fred L. Howard, Asst. Atty. Gen., for respondents.

STORCKMAN, Presiding Judge.

These appeals are from proceedings under §§ 542.380–542.420 RSMo 1949, V.A.M.S., which provide for the seizure of publications alleged to be obscene and authorize their destruction if, after a hearing, they are in fact found to be obscene. Six search warrants were obtained on October 10, 1957, from the Circuit Court of Jackson County by an officer of the Police Department of Kansas City. One of them was directed against the premises of a business wholesaling newspapers, books and magazines; the remaining five warrants were for premises on which were conducted displays and sales of such publications at retail.

The search warrants were executed on the same day and the returns were filed in court together with an inventory of the publications seized. A copy of the inventory was left with the persons in charge of the premises where the seizure was made. Notices were served upon the interested parties of a hearing to be held in the circuit court to determine whether the property seized constituted obscene, lewd, licentious, indecent, or lascivious material within the meaning of § 542.380 and whether it was subject to destruction pursuant to § 542.420. The claimants of the publications seized filed separate motions for the immediate return of the property seized and to quash the search warrant and a hearing of all issues was had before the trial court sitting without a jury.

By its judgment the trial court overruled the motions to quash the search warrants and found that 100 of the 280 publications in evidence were in violation of the Obscenity Statute, § 542.380. The remaining 180 publications and all copies thereof were ordered to be returned to the claimants. After unavailing motions for new trials, the claimants appealed. The appeals all present the same questions and have been consolidated.

■ This court has appellate jurisdiction because constitutional questions have been timely and properly presented. Art. V, Sec. 3, Constitution of Missouri 1945, V.A.M.S.; State v. Becker, 364 Mo. 1079, 272 S.W.2d 283.

Section 542.380 deals with the means of determining whether certain property, including publications alleged to be obscene, are of the kind prohibited by law and, insofar as here material, provides that upon a verified complaint a search warrant may be issued to a sheriff or any constable of the county directing him to search for and seize: "(2) Any of the following articles, kept for the purpose of being sold, published, exhibited, given away or otherwise distributed or circulated, viz.: obscene, lewd, licentious, indecent or lascivious books, pamphlets, ballads, papers, drawings, lithographs, engravings, pictures, models, casts, prints or other articles or publications of an indecent, immoral or scandalous character, or any letters, handbills, cards, circulars, books, pamphlets or advertisements or notices of any kind giving information, directly or indirectly, when, where, how or of whom any of such things can be obtained; * * *."

Section 542.400 provides that the judicial officer issuing the warrant shall set a day not less than five nor more than twenty days after the date of service and seizure, "for determining whether such property is the kind of property mentioned in section 542.380, and shall order the officer having such property in charge to retain possession of the same until after such hearing." The section further provides for posting a written notice of the hearing on the premises where the property was seized and for delivering a copy of such notice to any person claiming an interest in such property. Section 542.420 authorizes the destruction of the property or articles if they are found to be of the kind mentioned in § 542.380(2).

42 V.A.M.S. Supreme Court Rule 33 and particularly 33.01, dealing with procedural aspects of searches and seizures, provides, inter alia, for the seizure of personal property where authorized by statute if the verified complaint filed with the judge or magistrate states facts positively and not upon information and belief.

The appellants charge that these statutes and the court rule are violative of their constitutional rights of freedom of speech and press guaranteed by Art. I, Sec. 8, Constitution of Missouri 1945, and Amendment I of the United States Constitution as made applicable by the privileges and immunities and due process clauses of the Fourteenth Amendment of the United States Constitution, and guaranteed by the provisions of Art. I, Sec. 15, of the Missouri Constitution protecting them against unreasonable search and seizures. They say that the seizure without notice and an opportunity to be heard prior to seizure constitutes a prior restraint or censorship of the publications and allows the police officers and deputy sheriffs to make a judicial determination after the warrant was issued as to which of the appellants' periodicals and magazines were violative of the obscenity statutes and therefore subject to seizure. The appellants assert that freedom of speech and press occupy a preferred position among our constitutional guarantees, Murdock v. Commonwealth of Pennsylvania, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292, and that there is a distinction between a restraint imposed before circulation of a publication and a penalty imposed by reason of its circulation and that prior restraints can be justified only in most "exceptional cases", citing Near v. State of Minnesota ex rel. Olson, 283 U.S. 697–716, 51 S.Ct. 625–631, 75 L.Ed. 1357.

■ Conceding this much to be true, it must also be recognized as stated in Near v. State of Minnesota ex rel. Olson, supra, that "the authority of the state to enact laws to promote the health, safety, morals, and general welfare of its people is necessarily admitted", 51 S.Ct. 628; that "the protection even as to previous restraint is not absolutely unlimited", and that "the primary requirements of decency may be enforced against obscene publications." 51 S.Ct. 631. Also, in Roth v. United States, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, the Supreme Court held "that obscenity is not within the area of constitutionally protected speech or press." In State v. Becker, 364 Mo. 1079, 272 S.W.2d 283, 288–289, this court held: "It has been long held that the right of freedom of speech is subject to the state's right to exercise its inherent police power. The right of free speech is not an absolute right at all times and under all circumstances." The constitutionality of the penal obscenity statute, § 563.280, was attacked in the Becker case and it was held, inter alia, not to impair the constitutional guarantees of freedom of speech and press.

■ We cannot accept the appellants' contention that: "The possessor of publications should have the right to circulate his material subject to any criminal or other sanctions if the matter offends any governing obscenity such as Section 563.280, R.S.Mo.1949." [1] Relegating the state to punishment of the fait accompli would overlook and neglect entirely government's right and duty to protect the public from character contamination and its unfortunate consequences. If obscenity is as destructive and weakening to the moral fiber as the federal and state governments have always

1. Section 563.280, insofar as here pertinent, provides:

"Every person who shall manufacture, print, publish, buy, sell, offer for sale or advertise for sale, or have in his possession, with intent to sell or circulate, or shall give away, distribute or circulate any obscene, lewd, licentious, indecent or lascivious book, pamphlet, paper, ballad, drawing, lithograph, engraving, picture, photograph, model, cast, print, article or other publication of indecent, immoral or scandalous character, * * * shall, on conviction thereof, be fined not more than one thousand dollars nor less than fifty dollars, or be imprisoned not more than one year in the county jail, or both; * * *."

considered it, then its dissemination should be prevented just as certainly as the spread of disease germs should be curbed among the members of a community. The courts have never hesitated to enjoin potential menaces to public health or to approve the vaccination or innoculation of school children and others when reasonably required. Obviously, a state government does not have to permit the homes of its citizens to be destroyed by fire when the arson can be reasonably prevented. The contention stated has been decided adversely to the appellants in the Becker case, supra, as well as the Kingsley case which we shall now consider.

All of the constitutional questions here presented have been resolved adversely to the appellants' contention by Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469. This was a proceeding under the New York statute which is similar to that of Missouri. The New York act provided that upon a complaint being filed the issuance of a temporary injunction against the circulation of publications alleged to be obscene was authorized. Code Cr.Proc. § 22–a. If the court found the material to be obscene, a permanent injunction against its distribution could be issued and an order made for the destruction of the material. The Supreme Court of the United States held that the New York statute was not unconstitutional. It was held, 77 S.Ct. 1328(6), that the Fourteenth Amendment did not restrict the states to the use of criminal processes in seeking to protect its people of dissemination of pornography. The New York statute was held not to amount to prior censorship of literary products and not to violate the freedom of thought and speech protected by the Fourteenth Amendment.

The differences in the Missouri and New York statutes are in degree and not of kind. The New York statute provides for a hearing within one day after seizure and a decision within two days after hearing; the Missouri statute provides that the hearing shall be not less than five nor more than twenty days after the seizure. This provision may redound to the benefit of the owners of the publications in preparing their cases for trial. There is no complaint in this case that the appellants sought or desired an earlier hearing and it was refused. It has not been demonstrated that the difference in time of hearing is unreasonable. While publications are seized under the Missouri statute, no temporary injunction is issued as under the New York law. The dealers may continue to sell under the Missouri act if they have or can obtain the publications and desire to do so. The contention that the statutes and the Court rule are unconstitutional in the respects asserted is denied.

■ Apart from the judgment formally entered, the trial court filed in the office of the clerk of the circuit court a memorandum entitled "Opinion" in which the court, inter alia, set out the applicable statutes and, in connection with the test for determining whether the publications were obscene, lewd, lascivious, licentious, indecent and of an immoral character, cited and quoted from State v. Mac Sales Company, Mo. App., 263 S.W.2d 860, 863, State v. Pfenninger, 76 Mo.App. 313, 317, and State v. Becker, 364 Mo. 1079, 272 S.W.2d 283, 287. The appellants assert that the trial court applied the tests and standards of obscenity stated in those cases and that such tests and standards are violative of their rights of freedom of speech and press under the federal and state constitutions by virtue of the standards adopted by the Supreme Court of the United States in Roth v. United States and Alberts v. State of California, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, and Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412. It should be noted that the trial court's opinion states and *the judgment holds* that the 100 exhibits listed were obscene, lewd, licentious, lascivious, indecent and of an immoral and scandalous character "within the meaning and intent of Missouri Revised Statutes, 1949, Section 542.380."

The appellants are mistaken in their view of the holding of the Becker case which is controlling and the only one we need to discuss. They say the standard adopted was the effect of isolated portions of the publication upon particularly susceptible persons which has been construed to be the rule announced in Regina v. Hicklin, 1868, L.R. 3 Q.B. 360, one of the authorities discussed in Becker. Regardless of the present validity of the Hicklin rule, that was not the standard applied in the Becker case. In announcing the mode of determination the court stated 272 S.W.2d 286: "These questions have been considered and tested objectively as to the effect of these publications in their entirety upon persons of average human instincts." In this interpretation of Becker, this court is fortified by the opinion of the Supreme Court of the United States. In the Roth and Alberts case, the Becker case is listed as one of the decisions which has rejected the Hicklin test and substituted this standard: "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. 489, marginal note 26, 77 S.Ct. 1311. Appellants' claim of error is denied.

■ Moreover, appellate review in a nonjury case is upon both the law and the evidence, as in actions of an equitable nature, and a trial court's memorandum or written opinion is not binding and preclusive even if deemed a statement of grounds of decision. Grapette Co. v. Grapette Bottling Co., Mo.App., 286 S.W.2d 34, 36; Fort Osage Drainage District of Jackson County v. Jackson County, Mo., 275 S.W.2d 326, 328; Hammond v. Crown Coach Co., 364 Mo. 508, 263 S.W.2d 362, 366; Hilmer v. Decher, Mo.App., 183 S.W.2d 321, 326; § 510.310, subd. 2.

■ The appellants next contend that the complaints and the search warrants based thereon violated the search and seizure provisions of the Missouri Constitution, Art. I, Sec. 15, and Supreme Court Rule 33.01(b) in that (1) they did not describe the publications "to be searched for and seized in sufficient detail, and in particularity, to enable the person serving the warrant to readily ascertain and identify the same" and (2) the warrants were issued without a sufficient showing of probable cause. Both the complaints and the search warrants described the publications in the language of the statute, § 542.380(2). The constitution protects against "unreasonable searches and seizures" and provides that no search warrant "shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause * * *." Rule 33.01(b) provides that the search warrant must describe the place and property "in sufficient detail and particularity to enable the officer serving the warrant to readily ascertain and identify the same."

■ It is *unreasonable* searches and seizures that are prohibited by the constitution, so the determination must be whether the description of the publications was reasonably definite and particular considering the nature and character of the property involved. The proceedings under these statutes are essentially proceedings in rem having for their purpose the seizure and destruction of obscene material, gambling equipment and devices and the other prohibited property mentioned in § 542.-380. The general rule distinguishing the particularization of property description required in this class of cases is well stated in 79 C.J.S. Searches and Seizures, § 73f p. 861, as follows: "*Specific property; property of specified character.* Where the purpose of the search is to find specific property, it should be so particularly described as to preclude the possibility of seizing any other; but, if the purpose is to seize, not specified property, but property of a specified character, which, by reason of its character and of the place where, and the circumstances under which, it may be found, if found at all, would be illicit,

a description would be unnecessary and, ordinarily, impossible, except as to such character, place, and circumstances."

In 47 Am.Jur. 524, Searches and Seizures, § 37, there is this further statement: "A description of the property to be seized need not be technically accurate nor necessarily precise; and its nature will necessarily vary according to whether the identity of the property, or its character, is the matter of concern. Further, the description is required to be specific only so far as the circumstances will ordinarily allow. Thus, under a statute authorizing searches for gaming apparatus or implements, it is not sufficient to describe the property as goods, wares, and merchandise, or as chattels generally; but a search warrant commanding the seizure of 'gambling implements and apparatus used, kept, and provided to be used in unlawful gambling' on certain premises and in a certain building, is sufficiently definite. So, in the case of warrants to search for smuggled goods or for lottery tickets, a general description is deemed sufficient."

In State v. Cook, 322 Mo. 1203, 18 S.W. 2d 58, 60, a search warrant requiring the officers to seize "all intoxicating liquors" found on the premises was held sufficiently definite and not to deprive the defendant of his "right to a trial by jury on the issue of the intoxicating character of the liquor seized." In North v. State, 159 Fla. 854, 32 So.2d 915, 917, a warrant describing the property as "gambling implements and devices used for the purpose of gaming and gambling" was held sufficient. In Cagle v. State, 147 Tex.Cr.R. 354, 180 S.W. 2d 928, 933, a warrant describing the property as implements being kept for: "The establishment and operation of a lottery, and the keeping and exhibiting of a policy game" was held sufficient to justify the seizure of a variety of things used in conducting a policy game. In Frost v. People, 193 Ill. 635, 61 N.E. 1054, 1055, a warrant describing the property as "gaming implements and apparatus" was held sufficient.

In the circumstances of this case we hold the search and seizure was not unreasonable for lack of a sufficient description of the property to be seized.

■ With respect to probable cause, the separate complaints or applications for the search warrants, which were sworn to by a lieutenant of the Kansas City Police Department, were presented to the Circuit Court by the police lieutenant and an assistant prosecutor of Jackson County. The complainant swore to the facts "of his own knowledge" and the court made a finding that there was probable cause to believe the allegations of the complaint to be true and that there was probable cause for the issuance of the search warrants. Supreme Court Rule 33.01 further defines the statutory procedure and provides that the judicial officer shall issue the warrant if the complaint is verified and supported by affidavits "stating evidential facts from which such judge or magistrate determines the existence of probable cause", but it also authorizes the issuance of the warrant if complaint states the facts "positively and not upon information or belief" as was done in this case. We deem the factual allegations sufficient to support the finding of probable cause and the assignment of error is denied.

■ The search warrants were directed "to any peace officer in the state of Missouri." The appellants assert that this was improper and violative of their rights under Art. I, Sec. 15, of the Missouri Constitution and Supreme Court Rule 33.01 in that the warrants were not directed to a particular peace officer or officers by name. The constitution does not specify to whom a search warrant shall be addressed and § 542.380 provides that the judicial officer shall issue the warrant "to the sheriff or any constable of the county." Rule 33.01 provides the judge or magistrate shall issue the search warrant "directed to any peace officer." Rule 33.02 provides: "Every such search warrant shall be executed by a peace officer and not by any other

person." Section 542.290 provides: "Every such [search] warrant shall be executed by a public officer, and not by any other person."

In this regard the appellants rely upon United States v. Kohlman, D.C., 51 F.2d 313, which involved a federal search warrant in a prohibition case. It was held that a search warrant should be directed to a person or persons by name and not to a class and that it could only be executed in accordance with Title 11, Sec. 7, of the Espionage Act which provided that a federal search warrant may be served "by any of the officers mentioned in its direction, but by no other person, except in aid of the officer on his requiring it." 40 Stat. 229.* Obviously, neither the statute nor the decision is controlling in this matter of state law.

The appellants make no contention that the warrants were served by any one without authority, but simply that the warrant was "improper on its face." The record shows the warrants were executed by deputy sheriffs of Jackson County together with officers of the Kansas City Police Department. We find no merit in appellants' contention and it is denied.

■ The appellants' remaining assignment is that the trial court erred in finding that the publications in question are obscene, lewd, licentious, indecent, lascivious, immoral and scandalous within the meaning and intent of § 542.380. As we have previously pointed out the Missouri rule as applied in the Becker case is in accord with the standard approved by the Supreme Court of the United States in the Roth and Alberts cases, which is: "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. 489, 77 S.Ct. 1311, 1 L.Ed.2d 1498. We have also held that the trial court's opinion or memoran-

dum cannot be used to contradict the judgment formally entered even if it were inconsistent with the judgment; however, we do not so construe it.

It is impossible to adequately describe these exhibits and quite unnecessary. It is sufficient to say of them generally that they consist of pictures of young women, naked or nearly so, in suggestive and provocative poses with emphasis on bust development and lustful entreaty. The legends accompanying the pictures and other printed material add to the prurient interest created. It is stated on some of the publications that they are for artists and photographers or for some legitimate purpose and restricted use. However, the dominant character of the publications and the place and manner in which they were exposed for sale belie this thin disguise. Generally, the technical information on picture taking in these publications is less than that found on the leaflet in a roll of new film or in the pamphlet that accompanies the purchase of a modest camera. No one can seriously contend that any great work of art, literature, ideas or information will be lost to the world if these publications are not disseminated.

Our review of the evidence in cases tried upon the facts without a jury is "as in suits of an equitable nature" and the "judgment shall not be set aside unless clearly erroneous." Section 510.310, subd. 4. We have examined the exhibits and applied the tests approved in the Becker and Roth cases. While opinions may vary with regard to the proper classification of publications in that penumbral area between art and pornography, we do not find the judgment of the trial court to be "clearly erroneous" in any respect.

Accordingly the judgment is affirmed.

All concur.

* Now 18 U.S.C.A. § 3105.

On Application for Hearing before the Court en Banc

PER CURIAM.

In their supplemental brief filed for the hearing before the court en banc the appellants in their points relied on make this additional contention:

"The divisional opinion holding the warrants to sufficiently describe the items to be seized is erroneous in condoning the issuance of a general warrant for the seizure of publications and thereby violates appellants' freedom of speech and press under the First Amendment to the Constitution of the United States and deprives them of their property without due process of law and their privileges and immunities as citizens as guaranteed by the due process and privileges and immunities clause of Amendment Fourteen of the United States Constitution."

This adds nothing to the scope of the contentions previously made and disposed of in the divisional opinion.

Appellants also cite Smith v. People of State of California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205, decided since the decision in division. In the Smith case an ordinance which had the effect of imposing a strict criminal liability upon a bookseller possessing an obscene book without a showing that he had knowledge of its contents was struck down as infringing upon constitutional rights. This is not a criminal proceeding and a lack of guilty knowledge is not claimed. Our attention is also called to Kingsley International Pictures Corp. v. Regents of University of State of New York, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512. Neither these nor the other cases cited repudiate previous holdings of the Supreme Court of the United States that obscene material is not within the protection of the constitutional guarantees of freedom of speech and the press. Roth v. United States, 354 U. S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498. In fact the Smith case reaffirms that proposition. Thus the purpose of the Missouri statute is not unlawful and we hold the procedures employed are in compliance with due process of law and not violative of other constitutional rights. The divisional opinion correctly rules the contentions made.