**STATE of Missouri ex rel. Ralph MARTIN, Prosecuting Attorney in and for Jackson County, Missouri, Respondent,**

**v.**

**XLNT CORPORATION et al., Appellants.**

**No. KCD 26979.**

Missouri Court of Appeals, Kansas City District.

July 7, 1975.

Arthur A. Benson, II, Kansas City, Arthur M. Schwartz, Denver, Colo., for appellants.

Ralph L. Martin, Pros. Atty., Robert Frager, Asst. Pros. Atty., Kansas City, for respondent.

Before SWOFFORD, P. J., and WELBORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment in action by State of Missouri for civil injunction.

On June 29, 1973, the State of Missouri petitioned the Circuit Court of Jackson County for a declaratory judgment of obscenity and injunction alleging that defendant XLNT Corporation d/b/a Old Chelsea Theatre in Kansas City, Jackson County, Missouri, did, on or about June 1, 1973, and daily thereafter, possess a certain motion picture, "It Happened in Hollywood," with the intent to exhibit and show it to the public and have published and circulated it to the public by projection on a screen before the public; and that the movie is obscene under Section 563.285, RSMo 1969, V.A.M.S. Attached to the petition was the affidavit of Noel F. Vetter and Ronald E. Reese, special agents of the Federal Bureau of Investigation, who viewed the film between 10:01 a. m. and 11:36 a. m., on June 8, 1973, at the Old Chelsea Theatre. Included within the affidavit was their report of eleven pages constituting their factual observations of the film.

On June 29, 1973, upon consideration of the petition, together with the supporting affidavit, the court ordered defendants to appear in court and produce the movie for exhibition and presentation to the court for a determination whether injunctive relief as prayed should be granted.

The court viewed and received the movie in evidence on July 2, 1973.

On July 5, 1973, the trial resumed, the State rested, the court overruled defendants' motion for dismissal at the close of the State's evidence "for failure * * * to sustain the burden of proof," and defendants proceeded.

Over objection of the State and upon reservation of ruling as to admissibility,

defendants offered Exhibits 1 through 18 purporting to be "comparable" books and magazines available at stores in Kansas City during the time in question.

Also over objection by the State and upon reservation of ruling as to admissibility, defendants adduced testimony from Professor Oscar Raymond Eggers, Dr. Stanton L. Rosenberg, and Dr. John R. Price with respect to their views on obscenity of the film and community standards.

Professor Eggers was an Associate Professor of Sociology at the University of Missouri at Kansas City. Based upon his observation of sexually explicit material available in the community, exemplified by Exhibits 1 through 18, he felt there was a substantial market for such material; that in terms of sexual explicitness the movie was comparable with some of the literature available, and, from such observations, it was his opinion that the film neither exceeded the community's limit of candor nor appealed predominantly to the prurient interests of people in the community. On cross-examination, he stated that the movie contained a plot but "the portrayal of sexual activity was intended to be for primary emphasis. * * * From the standpoint of the characters portrayed I think there was no intent, no expectation of it portraying the lives of those persons as they live them day-by-day * * *." Professor Eggers also gave his definition of "hard core" pornography as "the portrayal of sexual organs in action," and, in his opinion, "It Happened in Hollywood" fits within that definition. He also gave his opinion "that were the film to be shown to a representative sample of adults in the greater Kansas City area and were they then able to speak candidly, with the guarantee of anonymity, a majority of adults would say they found it interesting and that they learned something. I believe a majority would say for public expression that they found it beyond the limits of candor."

Dr. Rosenberg was a psychiatrist. He stated that there are some kinds of sexual activity such as necrophilia, intercourse with a cadaver, and coprophilia, an interest in feces, which would arouse negative reactions in a large number of people. The movie contained no such scenes and, in his opinion, sexually explicit movies such as "It Happened in Hollywood" benefited the community by debunking primitive thoughts, feelings and attitudes about anatomy and sexual behavior, and it did not appeal to prurient interests of normal persons. On cross-examination, he recognized differing opinions among behavioral scientists as to the correlation, if any, between obscenity and social harm; and, in his opinion, there is no such thing as prurient interest or obscenity in sex.

Dr. Price was a clinical psychologist. Based upon his experience in private practice and defining "prurient" to mean an excessive or morbid interest in sexual matters, it was his opinion that the movie did not predominantly appeal to a prurient interest, applying standards of the average person in the Kansas City community. On cross-examination, he stated that the movie was unrealistic in terms of the "statistical occurrences of sexual activities"; and that while he found "It Happened in Hollywood" to be inoffensive, the only type of sexual activity which would offend his taste would be, for example, "sexual intercourse with a cadaver."

At the close of the defendants' case, the State offered no rebuttal, defendants again moved for dismissal, and the court took the motion and the case under advisement.

On August 3, 1973, the court entered judgment in favor of plaintiff and against defendants, declared the movie obscene, enjoined defendants from distributing or publishing it, and ordered its destruction, all in accordance with a memorandum opinion containing the court's findings of fact and conclusions of law, of which the following are pertinent:

"* * * this color film depicts an almost constant portrayal of explicit sex, including numerous acts of sexual intercourse, normal and perverted, masturbation, excretory functions and lewd exhibitions of the genitals.

"Interspersed throughout this episodic account of erotica and series of sensational sex encounters, which is connected by a thin tissue of a so-called plot, is the use of most every conceivable four letter word and other vile language. * * * [1]

"The guidelines for a determination of obscenity are set out in *Miller v. California*, [413 U.S. 15], 93 S.Ct. 2607 [37 L.Ed.2d 419] and *Paris Adult Theatre I, et al v. Station [Slaton] [sic]*, [413 U.S. 49] 93 S.Ct. 2628 [37 L.Ed.2d 446]. In Miller the Court defined the standards which must be used to identify the obscene material that a state may regulate without infringing on the First Amendment as applicable to the states through the Fourteenth Amendment as follows:

" 'The basic guidelines for the trier of facts must be: (a) Whether the average person applying contemporary, community standards would find the work, taken as a whole appeals to the prurient interest, (b) Whether the work depicts or describes, in a patently offensive way sexual conduct specifically [sic] defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.'

"The court gives two plain examples of what a state statute could define for regulation under part (b) above as being the sexual conduct prohibited. These examples are (a) patently offensive representations of descriptions of ultimate sexual acts, normal or perverted, actual or simulated. (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

"Utilizing these tests and guidelines this court finds as a mixed question of law and fact that the film 'It Happened in Hollywood' is obscene within the meaning of Sections 563.280 and 285, R.S.Mo. 1969 [V.A.M.S.].

"There may be situations in which it might be difficult to make a determination of obscenity under these guidelines, but in this case this film is certainly unequivocally and decidedly obscene. The court finds that this film undoubtedly appeals to the prurient interst [sic], depicts patently offensive acts of sexual intercourse, normal and perverted, excretory functions, and lewd exhibitions of the genitals and when taken as a whole has absolutely no serious literary, artistic, political value. * * *

"* * * points that remain to be resolved are the admissibility of certain evidence offered by defendants and received at the trial with the reservation that their admissibility would be determined on the court's final ruling.

"Defendants' Exhibits 1 through 18 consist of a number of books purchased at various book stores that defendants assert are comparable books.

"Defendants' Exhibit 19 contains a stipulation of a number of facts to the effect that various 'comparable' books may be purchased throughout the Kansas City area and that the sexually explicit movies are doing a good business in Kansas City.

"The last evidentiary problem has to do with the admissibility of expert testimony as to contemporary community standards and obscenity or not.

"Inasmuch as this is a non-jury case it is not necessary to discuss at length these evidentiary problems for the reason that this evidence is in the record and may or may not be considered by the appellate court in its independent determination of obscenity. It should be stated that as to

1. This finding in description of the film is not questioned by appellants except as will

be noted. It is adopted for the same purpose by this court.

the question of the admissibility of expert opinion on the question of community standards and obscenity, the Missouri Supreme Court has ruled this type of evidence inadmissible, particularly in those cases where the obscene material is pictorial and photographic because the obscene nature in those situations is patent on its face. *State v. Hartstein*, [Mo.] 469 SW 2[d] 329; *State v. Smith*, [Mo.] 422 SW 2[d] 50 and the several cases cited therein. In making this determination our Supreme Court recognized the statements made in concurring opinions in *Smith v. People of California*, [361 U.S. 147] 80 S.Ct. 215 [4 L.Ed.2d 205] and noted that this issue has not been ruled by a majority of the Supreme Court of the United States.

"As to Exhibits 1 through 18 and parts of Exhibit 19 offered as 'comparable' examples in book form of the film the Missouri Supreme Court held these 'comparables' inadmissible for the reason that each case must be judged on its own merits and that the issue of obscenity cannot be decided by comparing one book or film with another. *State v. Hartstein, supra*.

"As to the admission of those parts of Exhibit 19 dealing with the volume of sales of 'comparable' materials and the economic success of explicit sex movies in the Kansas City area as indicated in Variety Magazine and defendants' offer of these items on the theory that they prove Kansas City has accepted these types of books and shows, the Missouri Supreme Court has not specifically ruled these issues. This court does not consider the offered books as being comparable to a color movie film. The court cannot make a judgment as to whether the economic success of explicit sex films at other Kansas City movie houses should be considered as comparables because I have not viewed the movies mentioned.

"As to the probative value of this type of evidence the court observed in *State v. Smith, supra*: 'The fact that this book sold like hotcakes and led the best seller list for weeks does not prove it has social value but comes closer to proving that there is in this country a ready market for pornography and that morbid interest in sex is being commercially exploited.' However, these exhibits of various books, sales, data, and economic success of sexually explicit movies may have some probative value on the issue of contemporary community standards and are therefore received in evidence by the court.

"In that there is a serious question as to the admissibility of the mentioned items as evidence and that a majority of the Supreme Court of the United States has not made a determination as to whether due process, using that term in its primary sense of an opportunity to be heard and to defend a substantive right, allows a litigant to produce such proof—this court rules that for the purpose of this hearing all these exhibits are admitted in evidence and have been considered and weighed by the court in its ruling."

■ Appellants' Point II is a contention that Section 563.285, RSMo 1969, V.A.M.S., violation of which is the subject of this action, is unconstitutional, citing *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 498 (1957).

This contention is determined first, for if it presents a true constitutional question involving construction of the United States Constitution, then there is no jurisdiction in this court to resolve other questions on this appeal on their merits.

■ The constitutionality of Section 563.285, RSMo 1969, V.A.M.S., is no longer an open question. *State of Missouri ex rel. Wampler v. Bird*, 499 S.W.2d 780, 784[8] (Mo.1973), held: "* * * Sections 563.280 and 563.285, RSMo 1969, V.A.M.S., as construed and applied, *Paris Adult Theatre I v. Slaton* * * * [413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973)], are constitutional and are not overbroad in their provisions.

The statutes deal with the same matters as does the ordinance approved in *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 * * *, reaffirmed in *Miller v. California* * * *." See also *State v. Flynn*, 519 S.W.2d 10, 13 (Mo.1975). Note also that appellants apparently recognize this determination by filing their appeal in this court. If the constitutional question was actually viable, jurisdiction would need to be laid in the supreme court. Article V, Section 3, Constitution of 1945, as amended, V.A.M.S., effective January 1, 1972; *State v. Holley*, 488 S.W.2d 925 (Mo. App.1972).

Appellants contend (I) that the finding that the movie is obscene was against the weight of the evidence in that (a) the trier of fact must base the decision on evidence of community standards unless no such evidence is presented; and (b) the movie is not obscene under applicable community standards.

Appellants argue under I(a) that when they introduced competent evidence by way of their expert testimony as to community standards, any finding of obscenity *per se* based on the film alone " 'evaporates, much as a rebuttable presumption does, and the burden of proceeding shifts back to the Government * * *." *Hermann v. United States*, 304 A.2d 22, 24 (D.C.App.1973). See also concurring opinion in *Smith v. California*, 361 U.S. 147, 165–166, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

■ Appellants, by this argument would have the trier of fact bound as a matter of law by expert testimony and foreclosed from the duty to give any such testimony the credit and weight it may deserve. This is not the law.

"Expert testimony that a publication conforms to *general community standards* and is not obscene is not within the proper scope of expert testimony." *State v. Smith*, 422 S.W.2d 50, 58[10] (Mo. banc 1967). See also

*State v. Vollmar*, 389 S.W.2d 20 (Mo.1965); *State v. Becker*, 364 Mo. 1079, 272 S.W.2d 283 (1954); *State v. Hartstein*, 469 S.W.2d 329 (Mo. banc 1971), reversed by memorandum decision on other grounds at 404 U.S. 988, 92 S.Ct. 531, 30 L.Ed.2d 539. Obscene materials always have been sufficient "in themselves" to satisfy the federal constitution to support an obscenity conviction, *Kaplan v. California*, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); and it is not "error to fail to require 'expert' affirmative evidence that the materials were obscene when the materials themselves were actually placed in evidence." *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). Even the court in *Hermann v. United States, supra,* would "not require expert testimony as a matter of course to establish the *Roth-Memoirs* elements in every obscenity case." 304 A.2d l. c. 25[5].

Under I(b) appellants refer to the testimony of their three witnesses and their exhibits to assert that "The evidence presented by the defendant was uncontested," and argue that the movie is not obscene under applicable community standards.

■ The movie itself is evidence in conflict with defendants' evidence; and it, alone, if obscene, is sufficient to support the trial court's judgment. *Kaplan v. California, supra; Paris Adult Theatre I v. Slaton, supra.*

The trial court viewed the movie, employed the standards of *Miller v. California, supra,* considered all the evidence, and made a number of findings with respect to the obscene nature of the film. Only by reference to their experts' opinions as they may conflict with the court's findings do the appellants question the description of the film. As footnoted in *Paris Adult Theatre I v. Slaton, supra,* 413 U.S. 1. c. 56, 93 S.Ct. 1. c. 2634, "This is not a subject that

lends itself to the traditional use of expert testimony. Such testimony is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand. * * * No such assistance is needed by jurors in obscenity cases; indeed the 'expert witness' practices employed in these cases have often made a mockery out of the otherwise sound concept of expert testimony. * * * 'Simply stated, hard core pornography * * * speak[s] for itself.' " It is interesting to note in this connection that even defense expert Professor Eggers held the movie to be hard core pornography.

Dr. Rosenberg's statement that there is no such thing as prurient interest or obscenity in sex, and Dr. Price's statement that the only type of sexual activity offensive to his taste would be sexual intercourse with a cadaver, no doubt rendered their testimony suspect when considered by the court.

■ Appellants' so-called comparables were also lacking in value in the court's consideration. Such materials have been held inadmissible, and the issue of obscenity cannot be decided by comparing a book or film with another. *State v. Hartstein, supra; State v. Smith, supra; State v. Vollmar, supra; State v. Becker, supra.*

■ Accordingly, this record supports the trial court in the finding that the film in question, "It Happened in Hollywood," is obscene under current tests and that its showing violated Section 563.280, RSMo 1969, V.A.M.S., and was subject to injunction and destruction under Section 563.285, RSMo 1969, V.A.M.S.

Judgment affirmed.

All concur.